# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

PAUL J. McNALLY, as he is TRUSTEE,
NEW ENGLAND LABORERS' TRAINING TRUST
FUND; LOUIS MANDARINI, JR. as he is TRUSTEE,
MASSACHUSETTS LABORERS' HEALTH AND
WELFARE FUND; JAMES MERLONI, JR., as he is
TRUSTEE, MASSACHUSETTS LABORERS'
PENSION FUND and MASSACHUSETTS LEGAL
SERVICES FUND; MARTIN F. WALSH, as he is
TRUSTEE, MASSACHUSETTS LABORERS'
ANNUITY FUND and MASSACHUSETTS
LABORERS' DISTRICT COUNCIL,                         C.A. No. 05-10147 RCL
        Plaintiffs

        vs.

ACT ABATEMENT CORP.,
        Defendant

        and

PEABODY CONSTRUCTION CO., INC.,
        Reach-and-Apply Defendant

        and

DUNBAR & RODMAN, LLP,
        Trustee

---

## AMENDED COMPLAINT
## (LEAVE TO FILE GRANTED ON FEBRUARY 1, 2007)

## NATURE OF ACTION

1.     This is an action brought pursuant to §§502 and 515 of the Employee Retirement

Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132(a)(3) and (d)(1) and

1145 and §301 of the Labor Management Relations Act, 29 U.S.C. §185, by employee benefit

plans and a labor union to enforce the obligations to make contributions to such plans due under the terms of a collective bargaining agreement and the plans.

## JURISDICTION

2.      The Court has exclusive jurisdiction of this action pursuant to §502(a), (e) and (f) of ERISA, 29 U.S.C. §§1132(a), (e) and (f), and §301 of the Labor Management Relations Act, as amended, 29 U.S.C. §185 without respect to the amount in controversy or the citizenship of the parties as well as pendent jurisdiction.

## PARTIES

3.      Plaintiff Paul J. McNally is a Trustee of the New England Laborers' Training Trust Fund.  The New England Laborers' Training Trust Fund is an "employee welfare benefit plan" within the meaning of §3(1) of ERISA, 29 U.S.C. §1002(1).  This Fund trains apprentices and journey workers on the construction industry.  The Fund is administered at 37 East Street, Hopkinton, Massachusetts, within this judicial district.

4.      Plaintiff Louis Mandarini, Jr. is a Trustee of the Massachusetts Laborers' Health and Welfare Fund.  The Massachusetts Laborers' Health and Welfare Fund is an "employee welfare benefit plan" within the meaning of §3(3) of ERISA, 29 U.S.C. §1002(3).  It provides health, dental and prescription benefits and life insurance, accident insurance, and disability pay to participants.  The Fund is administered at 14 New England Executive Park, Burlington, Massachusetts, within this judicial district.

5.      Plaintiff James Merloni, Jr. is a Trustee of the Massachusetts Laborers' Pension Fund.  The Massachusetts Laborers' Pension Fund is an "employee pension benefit plan" within the meaning of §3(2) of ERISA, 29 U.S.C. §1002(2)(A).  It provides participants with a defined

pension benefit. The Fund is administered at 14 New England Executive Park, Burlington, Massachusetts, within this judicial district.

6.     Plaintiff Martin F. Walsh is a Trustee of the Massachusetts Laborers' Annuity Fund.  The Massachusetts Laborers' Annuity Fund is an "employee pension benefit plan" within the meaning of §3(2)(A) of ERISA, 29 U.S.C. §1002(2)(A).  This Fund provides participant directed individual accounts.  The Fund is administered at 14 New England Executive Park, Burlington, Massachusetts, within this judicial district.

7.     Plaintiff James Merloni, Jr. is a Trustee of the Massachusetts Laborers' Legal Services Fund.  The Massachusetts Laborers' Legal Services is an "employee welfare benefit plan" within the meaning of §3(1) of ERISA, 29 U.S.C. §1002(1).  The Fund is administered at 14 New England Executive Park, Burlington, Massachusetts, within this judicial district.

8.     The Health and Welfare, Pension, Annuity, Legal Services and Training Funds are multi-employer plans within the meaning of §3(37) of ERISA, 29 U.S.C. §1002(37).  They are hereinafter collectively referred to as "the Funds."

9.     The Massachusetts Laborers' District Council ("Union") is a labor organization within the meaning of §301 of the LMRA, 29 U.S. C. §185.  The Union is administered at 7 Laborers' Way, Hopkinton, Massachusetts.

10.     Defendant ACT Abatement Corp. (hereinafter "ACT" or "the Employer") is a Massachusetts corporation with a principal place of business at 18 Broadway, Lawrence, Massachusetts, and is an employer engaged in commerce within the meaning of §3(5) and (12) of ERISA, 29 U.S.C. §1002(5) and (12).

11.     Reach-and-Apply Defendant Peabody Construction Co., Inc. (hereinafter "Peabody") is a Massachusetts corporation with a principal place of business at 536 Granite

3

Street, Braintree, Massachusetts.  ACT worked as a subcontractor to Peabody on a project known as Newton South High School.  The Funds have a legal or equitable interest in any payments due ACT from Peabody for work conducted on this project.

12.     Dunbar & Rodman, LLP is a limited liability partnership with a principal place of business at One Gateway Center, Newton, MA  02458.  Dunbar & Rodman is holding money in its IOLTA account that Peabody and its surety Travelers Casualty and Surety Company of America owed to ACT and that ACT and Peabody agreed to pay to the Plaintiffs.

## GENERAL ALLEGATIONS OF FACT

### ACT's Collective Bargaining Agreement

13.     On or about May 17, 1995, defendant ACT agreed in writing to be bound to the terms of the Restated Agreements and Declarations of Trust establishing Plaintiff Funds, to the terms of a collective bargaining agreement requiring contributions to Plaintiff Funds; and to any successor agreements.  A copy of ACT's signed agreement ("short form agreement") is attached hereto as Exhibit A.

14.     Because of the short form agreement, ACT has been a party to successive collective bargaining agreements with the Massachusetts Laborers' District Council, including the agreement which is effective from June, 2004 through May, 2008 ("the Agreement").  A copy of this Agreement is attached hereto as Exhibit B.

15.     The Agreement, like its predecessor agreements, requires employers to make contributions to Plaintiff Funds for each hour worked by covered employees.  The Agreement specifies the amount to be contributed by an employer to each of Plaintiff Funds for each hour worked.  Employers are also required to file monthly Remittance Reports, on which employers calculate the payments they owe.

16.     The Agreement further provides that if delinquent payments have not been made after written notice has been given and seventy-two hours have passed, then employers "shall not have the privilege of employing Laborers under the terms of this Agreement . . . ." <u>See</u> Ex. B, Art. XX.

## ACT's Delinquency and Settlement Agreements

17.     In or about June, 2004, the Funds audited ACT and determined that it owed $294,638.17 in contributions for work performed through May, 2004, together with interest and underpayments.

18.     On June 27, 2004, the parties entered into their first Settlement Agreement pursuant to which ACT agreed to pay $12,000.00 each week toward its audit balance, with the exception of every fourth week, when it would pay $47,000.00.  In consideration for ACT's compliance with the payment arrangements, the Union agreed to refrain from withholding labor and the Funds agreed to refrain from filing suit.  A copy of the June 27, 2004 Settlement Agreement is attached hereto as Exhibit C.

19.     After several payments, ACT ceased complying with the terms of the Settlement Agreement but cooperated with the Funds' efforts to collect monies owed from third parties. Nevertheless, as of December, 2004, it still owed $72,448.19 of the original audit balance for the period February, 2004 through May, 2004, as well as an unliquidated amount for the period June through December, 2004.

20.     On January 25, 2005, the Funds filed the instant lawsuit, naming Peabody Construction Co., Inc. as a reach-and-apply defendant.

21.     By letter dated March 25, 2005 ACT, by its then counsel, offered to pay its outstanding liability by, *inter alia*, pledging the payment it expected to receive from Peabody on

the Newton South job in an amount it then believed to be in excess of $300,000.  A copy of that letter is attached hereto as Exhibit D.

22.     In September, 2005, the Funds again audited ACT and determined that although it had paid all contributions owed for the previous audit period, it had accrued a new liability of $268,193.00 for the period June, 2004 through August, 2005.

23.     On October 25, 2005, ACT met with Louis Mandarini, Jr., in his capacity as the Business Manager for Laborers' Local 22, to negotiate a new payment plan.  Although ACT disputed a portion of the audit balance, which the Funds agreed to adjust, it admitted to the vast majority of the Funds' audit.  ACT's proposal again provided for payment, from the monies it expected to obtain from its claim against Peabody Construction Co., Inc.'s labor and payment bond on the Newton South High School job. It also agreed to pay all current contributions as they came due.  Copies of ACT's October 25, 2005 payment proposal and its November 4, 2005 revised proposal, which included the expedited payment plan demanded by the Union, are attached hereto as Exhibit E.  In consideration for ACT's commitment to and compliance with this payment arrangement, the Union agreed to allow ACT to continue working.

24.     ACT paid the contributions for September, October and November, 2005, as set forth in its proposal and, through additional payments and an agreed upon adjustment to the audit balance, reduced that balance to $215,180.00.

25.     Fund counsel regularly communicated by mail and phone with ACT, Peabody and Travelers about the Newton South High School payment and ACT sought counsel's assistance in getting the paperwork processed so that payment could be released.  Copies of relevant October and December, 2005 communications from ACT and Peabody to Fund counsel are attached hereto as Exhibit F.

26.    By letter dated January 18, 2006, ACT proposed yet another payment plan to the Funds' Trustees. That plan again memorialized ACT's agreement to pay the Funds from the proceeds of its claim against Peabody's bond. Specifically, ACT agreed to pay at least an additional $105,000.00 from the Newton South High School job. ACT further agreed that "to the extent that ACT receives any funds over $105,000 (possibly an additional $85,000), ACT will pay those funds to the Union immediately upon receipt if any past due amounts are owed to the Union at that time." ACT committed to remaining current in its payment obligations as well. A copy of the January 18, 2006 letter is attached hereto as Exhibit G.

27.    The Trustees voted to approve ACT's payment plan, which also provided for monthly payments of $3,809.00 with $15,000.00 balloon payments every six months. ACT was notified of the Funds' acceptance of its proposal by letter dated January 24, 2006, a copy of which is attached hereto as Exhibit H.

28.    Between January and October, 2006, Funds' counsel had regular communications with counsel for ACT, with Peabody and with Peabody's surety, Travelers Casualty and Surety Company of America, about the additional payment to the Funds for the Newton South job and about the negotiations between ACT, Peabody and Travelers as to what remained due and owing. Copies of relevant correspondence are attached hereto as Exhibit I.

29.    By letter dated March 29, 2006, ACT provided Funds' counsel with a signed change order from Peabody, agreeing to pay $95,679.00, the settlement figure agreed to by ACT and Peabody, "which when paid is also pledged to the Fund." A copy of the March 29, 2006 letter is attached hereto as Exhibit J. This payment was to be in addition to an initial payment from the Newton South High School job in the amount of $46,211.00.

30.    In May, 2006, the Funds received the partial payment of $46,211.00.

31.     On or about December 12, 2006, Travelers and Peabody agreed to settle ACT's claim against Peabody's bond for $95,679.34.  Payment was to be made to the Funds in exchange for which the Funds were to, and did, sign a release of claims against Peabody and Travelers.  A copy of that document is attached hereto as Exhibit K.

32.     As ACT's counsel, Dunbar & Rodman, had placed a lien for attorney's fees on the settlement, the check was placed in Dunbar & Rodman's IOLTA account, with representations by the firm that payment would be delivered to the Funds after the check cleared and the attorney's fees were deducted.  Dunbar & Rodman first sought to deduct $10,619.41 in payment of their fees but agreed to settle for $8,500.00.  Copies of emails between Fund counsel and Dunbar & Rodman concerning payment of the remainder are attached hereto as Exhibit L.

33.     ACT is now refusing to authorize Dunbar & Rodman to release the check.

**ACT's Current Liability**

34.     On or about December 14, 2006, the Funds audited ACT for the period September, 2005 through November, 2006 and determined that again, ACT underreported contributions, thereby accruing an additional liability for the audited period of $80,715.90.  These contributions are in addition to the $134,857.61 in contributions that it still owes for the period January through August, 2005 as well as the $57,954.47 in underpayments and interest it owes on late payments.  A copy of the audit is attached hereto as Exhibit M.

**COUNT I - VIOLATION OF ERISA -
DELINQUENT CONTRIBUTIONS**

35.     Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1-34 supra.

36.     The failure of ACT to make contributions on behalf of all covered employees as required by the terms of the Funds and the collective bargaining agreement violates §515 of ERISA, 29 U.S.C. §1145.

37.     A copy of this Complaint is being served upon the Secretary of Labor and the Secretary of the Treasury by certified mail as required by §502(h) of ERISA, 29 U.S.C. §1132(h).

## COUNT II - VIOLATION OF LMRA - DELINQUENT CONTRIBUTIONS AND DUES

38.     Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1-37 supra.

39.     The failure of ACT to make contributions on behalf of all covered employees and to remit the dues it deducted from employees' pay checks as required by the terms of the Funds and the collective bargaining agreement violates §301 of the Labor Management Relations Act, 29 U.S.C. §185.

## COUNT III - BREACH OF CONTRACT

40.     Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1-39 supra.

41.     ACT's refusal to release the $87,179.00 from Peabody and Travelers, currently held in the IOLTA account of its attorneys, Dunbar & Rodman, LLC, to the Funds breaches its Settlement Agreement with the Funds.

## COUNT IV - REACH-AND-APPLY AGAINST PEABODY CONSTRUCTION CO., INC.

42.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 41 above.

43.    ACT worked as a subcontractor to Peabody at Newton South High School in Newton, Massachusetts.  Peabody owed ACT money for work ACT performed on the Newton South High School job.  The Funds have a legal or equitable interest in any payments due ACT from Peabody for work conducted on the Newton job and any other projects.

44.    The funds held by Peabody cannot be attached or taken on execution except pursuant to G.L. c. 214, §3(6).

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff Funds requests this Court to grant the following relief:

a.    Order the attachment by trustee process of the $87,179.34 held in the IOLTA account of Dunbar & Rodman, LLP;

b.    Enter a temporary restraining order against Dunbar & Rodman, LLP and its agents, servants, employees, attorneys, and upon those persons in active participation or concert with them and those persons acting at their command who receive actual notices of this order by personal service or otherwise, and each and every one of them, from secreting, concealing, destroying, damaging, selling, transferring, pledging, encumbering, assigning, or in any way or manner disposing of or reducing the value of, or making any payment to ACT or any individual or entity other than the Massachusetts Laborers' Benefit Funds, from the IOLTA account;

c.    After notice and a hearing, enter an Order containing prayer 'b' or entering prayer 'b' as a preliminary injunction and further, ordering Dunbar & Rodman to make payment of the $87,179.34 to plaintiff Funds;

d.    Order the attachment of the machinery, inventory and accounts receivable of defendant ACT;

e.      Enter judgment in favor of the Plaintiff Funds in the amount of $215,573.51 plus

any additional amounts determined by the Court to be owed by ACT or which may become due

during the pendency of this action, together with interest on the unpaid contributions at the rate

prescribed under §6621 of the Internal Revenue Code, liquidated damages in an amount equal to

20 percent of the total of unpaid contributions or the total interest owed, whichever is greater,

reasonable attorneys' fees, and costs, all pursuant to 29 U.S.C. §1132(g)(2); and

f.      Such further and other relief as this Court deem appropriate.

Respectfully submitted,

PAUL J. McNALLY, as he is
TRUSTEE, NEW ENGLAND
LABORERS' TRAINING TRUST FUND,
et al.,

By their attorneys,

/s/ Anne R. Sills
Anne R. Sills, Esquire
BBO #546576
Gregory A. Geiman
BBO #655207
Segal, Roitman & Coleman
11 Beacon Street
Suite #500
Boston, MA  02108
(617) 742-0208
asills@segalroitman.com

Dated:  February 2, 2007

ARS/ars,gag&ts
ARS 6306 03-294/complt-amend3.doc

# MASSACHUSETTS LABORERS' DISTRICT COUNCIL
## WRECKERS' ACCEPTANCE OF AGREEMENT AND DECLARATION OF TRUST

#51744

The undersigned Employer has read and hereby approves the following Agreements by and between THE EASTERN MASSACHUSETTS BUILDING WRECKERS' ASSOCIATION, INC. effective JULY 1, 1994 and the Massachusetts Laborers' District Council in behalf of Building Wreckers' Local Union 1421 of the Laborers' International Union of North America, and any successor Agreement between the parties and herewith accepts the same and becomes one of the parties thereto and agrees to abide by all its terms and conditions.

The life of these Agreements is to be co-extensive with the terms set out or as they shall be set out from time to time in the aforementioned collective bargaining agreements with the above-named Association and shall continue in effect unless the Employer gives the Union notice of desired change or termination of a particular collective bargaining agreement in keeping with the applicable notice provisions contained herein.

These Agreements shall be binding upon the Employer named herein, and its successors and assigns, and no provisions herein contained shall be nullified or affected in any manner as a result of any consultation, sale, transfer, assignment, joint venture or any combination or other disposition of the Company.

The said Agreement provides among other conditions, contributions to the Massachusetts State-wide Laborers' Health & Welfare Fund, Massachusetts State-wide Laborers' Pension Fund, New England Laborers' Training Fund, Massachusetts State-wide Laborers' Annuity Fund, New England Laborers' Labor-Management Cooperation Trust, New England Laborers' Health & Safety Fund and the Massachusetts State-wide Legal Services Fund and the Employer agrees to be bound by the foregoing Agreements and Declaration of Trust and hereby irrevocably designates as its representatives of the Board of Trustees such Trustees as are named in said Agreements as Employer Trustees together with their successors selected in the manner provided within said Agreements and agrees to be bound by all actions taken by said Employer Trustees pursuant to the said Agreements and Declaration of Trust.

DATE: 5-17-95

Mass. Laborers' District
Council l/b/o Local 1421
Boston, MA

_Laurence W. Lom_ B.M.
**Authorized Representative**

Wrecking Local 1421
P. O. Box 1238
Boston, MA 02205
(617) 269-5456

A.C.T Abatement Corp
**Employer**

_Eric Baxter_ President
**Authorized Representative**

255 Essex Ave
**Address**

Lawrence MA 01842
City        State       Zip

Telephone: 508-794-9530
541-4010

MASSACHUSETTS STATE-WIDE WRECKING AGREEMENT


between


THE EASTERN MASSACHUSETTS BUILDING WRECKERS'
ASSOCIATION, INC.

with


MASSACHUSETTS LABORERS' DISTRICT COUNCIL
in behalf of

BUILDING WRECKERS' LOCAL UNION 1421

of the

LABORERS' INTERNATIONAL UNION OF NORTH AMERICA
AFL-CIO



EFFECTIVE:
JULY 1, 2000 - JUNE 30, 2004

# TABLE OF CONTENTS

*PAGE*

AGREEMENT ................................................................................................ 1

PREAMBLE ................................................................................................. 1

DECLARATION OF PRINCIPLES .......................................................... 1

TERRITORIAL JURISDICATION ........................................................... 2

UNION RECOGNITION, UNION SECURITY EMPLOYMENT OF LABORERS & SUBCONTRACTORS 2

WAGES, HOURS, CLASSIFICATIONS, SHIFTS ...................................... 5

HOLIDAYS ................................................................................................. 6

BUSINESS MANAGER, FIELD REPRESENTATIVE, STEWARD, FOREMAN ........................................... 7

REPORTING TIME PAY ........................................................................... 8

CHECK-OFF AND PAYROLL DEDUCTION ............................................ 9

CONDITIONS OF AGREEMENT .............................................................. 11

MASSACHUSETTS LABORERS' HEALTH & WELFARE FUND .............. 13

MASSACHUSETTS LABORERS' ANNUITY FUND .................................. 14

MASSACHUSETTS LABORERS' PENSION FUND .................................. 15

NEW ENGLAND LABORERS' TRAINING TRUST FUND ........................ 16

MASSACHUSETTS LABORERS' LEGAL SERVICES FUND ..................... 17

NEW ENGLAND LABORERS' LABOR-MANAGEMENT COOPERATION TRUST ..................... 17

NEW ENGLAND LABORERS' HEALTH AND SAFETY FUND .................. 18

TERRITORIAL AND WORK JURISDICTION COVERAGE AND DESCRIPTION OF WRECKING LABORERS' WORK ................................................................. 20

FAVORED NATIONS CLAUSE ................................................................. 22

DELINQUENT PAYMENTS ...................................................................... 22

SEVERAL LIABILITY ............................................................................... 23

NO STRIKE CLAUSE ................................................................................ 24

PROCEDURE FOR ADJUSTMENT OF DISPUTES AND ARBITRATION ................. 24

APPLICABILITY OF AGREEMENT .................................................................................................... 25

FEDERAL HEALTH INSURANCE LAW ............................................................................................ 25

TERMINATION OF AGREEMENT ..................................................................................................... 26

ASBESTOS REMOVAL MEMORANDUM............................................................................................ 27

DRUG ABUSE PREVENTION AND DETECTION ............................................................................. 28

SIDE LETTER OF AGREEMENT ....................................................................................................... 34

WAGE RATES & CLASSIFICATIONS................................................................................................. 35

# AGREEMENT

THIS AGREEMENT made and entered into this 1st day of July, 2000, by and between The Eastern Massachusetts Building Wreckers' Association, Inc. referred to hereinafter as the "Association" acting for and in behalf of and under the authority of its members as per Schedule I attached hereto and made a part hereof, and any other member joining said Association during the term of this Agreement, which members shall hereinafter be referred to as the "Employer" and the Massachusetts Laborers' District Council, hereinafter referred to as the "Union", acting for and in behalf of Building Wreckers' Local Union 1421, Boston, Massachusetts, of the Laborers' International Union of North America, hereinafter referred to as the "Local Union".

## PREAMBLE

This Agreement is entered into to facilitate the adjustment of grievances and disputes between the Employers and employees to provide, insofar as possible, for the continuous employment of labor and to bring about stable conditions in the industry, and to establish a necessary procedure for the amicable adjustment of all disputes which may arise between Employers and employees.

## DECLARATION OF PRINCIPLES

There shall be no discrimination against any worker by reason of race, creed, color, sex, age or national origin as these terms are defined by law. All laborers shall be qualified to work pursuant to the Immigration Reform and Control Act and must complete I-9 forms and provide the Employer with the documents required by law prior to being considered eligible to work. The Employer shall abide by the Federal Occupational Safety and Health Act, the Environmental Protection Act and the laws and regulations administered by the Massachusetts Department of Environmental Protection pertaining to Asbestos Removal.

1

# ARTICLE I
## TERRITORIAL JURISDICTION

This Agreement shall apply to the cities and towns in the Commonwealth of Massachusetts and to Salem, New Hampshire.

# ARTICLE II
## UNION RECOGNITION, UNION SECURITY
## EMPLOYMENT OF LABORERS & SUBCONTRACTORS

*Section 1.*    The Employer hereby recognizes and acknowledges that the Union is the exclusive representative of all employees in the classifications of work covered by this Agreement for the purpose of collective bargaining as provided by the Labor-Management Relations Act of 1947, as amended.

Inasmuch as the Employer is satisfied that the Union represents a majority of its employees in the bargaining unit described herein, the Employer recognizes the Union as the exclusive bargaining agent described herein, the Employer recognizes the Union as the exclusive bargaining agent under Section 9(a) of the National Labor Relations Act for all employees within the bargaining unit on all present and future job sites within the jurisdiction of the Union, unless and until such time as the Union loses its status as the employees' exclusive representative as the result of an NLRB election requested by the employees.  The Employer agrees that it will not request an NLRB election and expressly waives any right it may have to do so.  If the Union has not yet submitted a determination of its majority support, the Employer agrees that, upon the Union's presentation of evidence of majority status among its employees in the bargaining unit described herein, it will voluntarily recognize the Union as the exclusive bargaining agent for all employees within the bargaining unit on all present and future job sites within the jurisdiction of the Union.  The Employer expressly waives any right it has to condition its recognition of the Union upon the Union's certification by the NLRB as the employees' bargaining representative following the NLRB election.

The Employer and the Union will bargain in good faith with respect to renewal or extension of the agreement or any subsequent collective bargaining agreement.

*Section 2.*    The Employer agrees that all employees of the Employer employed in the work covered by this Agreement, who on the effective date of this Agreement are not members of the Union, and all said employees hired on or after said effective date shall become members of the Union after the eighth (8th) day

following the beginning of their employment and shall thereafter during the term of Agreement, maintain such membership in good standing as a condition of continued employment.

**Section 3.** Upon receipt of written notice from the Union, the Employer shall discharge any employee who fails to become or is not a member of the Union on the prescribed day, provided membership was available under the same terms and conditions as generally applicable to other members. Further, all employees who fail to maintain their membership in good dues standing shall be summarily discharged by the Employer. The Union agrees to indemnify, defend and hold the Employer harmless from any claim arising from any such discharge.

**Section 4.** "Membership in good standing" as referred to herein means the tender, or payment of initiation fees and dues to the Union.

**Section 5.** Should the present Federal Law be amended during the term of this Agreement to allow compulsory membership in the Union on the date of employment, or on any period less than eight (8) days from the commencement of employment, this clause is hereby automatically changed to include such amendments as of the effective date of the law.

**Section 6.**
a) The Employer recognizes that Local 1421 is the established and prime source of skilled and dependable labor, necessary and required to perform the kind of work covered within the jurisdiction of Local Union 1421 which is ready, willing and able to furnish workmen to perform the work covered by this Agreement.
b) The Employer reserves and shall have the right to rehire any employee who has been an employee of the company provided said employee has worked for the Employer during the period of four (4) months preceding the date of rehiring. The Employer will furnish Local Union 1421, upon request, the name and address of said employee.
c) When the Employer has exhausted the rehiring of former employees as stated in Section (b) above, then the Employer must inform the Local 1421 office of all work opportunities and openings. Local 1421 shall be given the first opportunity to refer applicants for such employment openings.
d) The Employer reserves and shall have the right to accept or reject any applicants referred by Local Union 1421. The Employer

reserves and shall have the right to transfer laborers to any job site in the jurisdiction area of Local Union 1421.

e)  The Employer, in requesting referrals, shall specify to Local Union 1421: (1) the location of the project, (2) the nature and type of construction involved, (3) the work to be performed, (4) the skills and experience required, (5) the number of employees required and (6) such other information as is deemed essential by the Employer in order to enable Local Union 1421 to make proper referral of applicants.

f)  Selection of applicants for referral to jobs shall be on a non-discriminatory basis and shall in no way be affected by Union membership, bylaws, rules, regulations, constitutional provisions or any other aspects or obligation of Union membership policies or requirements.

g)  In the event that Local Union 1421 is unable to fill the request of the above Employer for skilled workers, as defined in Section (e) above, within a twenty-four (24) hour period, excluding Saturdays, Sundays and holidays, after such request is made by the Employer, the Employer may employ applicants directly at the job site or may request and receive referrals from Local Unions other than Local 1421 with the same privileges accorded the contractors signatory to Agreements with those Locals.

h)  When an Employer requests a certain number of laborers pursuant to Sec. (e) of this Article and such laborers appear on the job shift or work, at the time requested, eligible and ready for work and with a card from the Union office showing that they come to fill the request, then they must be put to work or paid not less than two (2) hours time unless such referrals lack the skill for and experience on Building Wreckers' work or are prevented from working on account of bad weather or conditions which could not have been reasonably anticipated by the Employer.

*Section 7. Subcontracting:*  The Employer agrees that the wages, including Health & Welfare, Pension and Training, Annuity, New England Laborers' Labor-Management Cooperation Trust, Legal Services, Unified Trust and New England Laborers' Health & Safety Fund contributions, and hours provided for by this Agreement shall encompass the entire work covered by this Agreement, thereby applying equally to any subcontract let by the Employer on work covered by this Agreement at the site of any job.

The Employer further agrees to refrain from subletting any work covered by this Agreement to be done at the site of a demolition project, except where such subcontractor subscribes and agrees to be bound in writing by this Agreement and complies with all of the terms and conditions of this Agreement.

This Section shall not apply to file bidders on projects that carry file sub-bidders and to vendors furnishing material solely or to any person furnishing trucking or transportation.

***Section 8.*** If any provision of this Agreement is in conflict with the laws or regulations of the United States, the State of Massachusetts, such provision shall be superseded by such law or regulation, but all other provisions of this Agreement shall continue in full force and effect; provided that in no case shall wage rates be paid which are lower than those set out in this Agreement.

## ARTICLE III
## WAGES, HOURS, CLASSIFICATIONS, SHIFTS

***Section 1.*** The actual negotiated "Wage and Benefit Schedule" is included as "Appendix A" to this Agreement and incorporated herein by reference. The parties agree that the Council maintains the right to allocate the negotiated Wages and Benefit increases reflected in Appendix A, in its sole discretion, among wages, fringe benefits and dues deduction.

Any bulldozer - An employee covered by this Agreement must be employed on jobs where a crane, bulldozer and/or backhoe is used.

***Section 2.*** Forty (40) hours shall constitute a weeks work for all Laborers; Any consecutive eight and one half hours excluding a half hour for lunch, between 6:00 am and 6:00 pm Monday through Friday shall constitute a days work. However, in the event that a change in the regular starting time and quitting time is requested of Local Union 1421 for a particular job, such request shall not be unreasonably denied. Work performed on Sundays and holidays requires a permit from Local Union 1421. If any work is to be performed on Saturday, the Steward shall be notified. All hours on any regular workday prior to starting time and after quitting time established herein shall be paid as provided in Section 4 of this Article.

***Section 3.*** When two (2) or more shifts are worked, they shall continue for at least three (3) consecutive regular workdays unless the contractor is prevented from working such days or any portion thereof because of conditions beyond his

5

control, including weather conditions. Shift work, that is, second and third shift shall work a minimum of three (3) working days.

The first shift shall be of eight (8) hours, the second shift shall be of seven and one-half (7½) hours and the third shift shall be of seven (7) hours and eight (8)hours pay shall be paid for each shift.

When working on Saturdays, the first shift shall work eight (8) hours and receive twelve (12) hours pay at the straight time rate and the second and third shifts shall work seven (7) hours each and receive twelve (12) hours pay at the straight time rate. When working Sundays and holidays, the first shift shall work eight (8) hours and receive sixteen (16) hours pay at the straight time rate and the second and third shifts shall work seven (7) hours each and receive sixteen (16) hours pay at the straight time rate. A shift which begins at or after 12:00 Midnight Sunday shall be considered a third shift.

*Section 4.* Overtime shall be paid for at time and one-half. Work performed Sundays and holidays shall be paid for at the rate of double the regular straight time hourly rate.

*Section 5.* An employee who actually works either seven (7) or seven one half (7½) hours in accordance with the established shifts of this section, shall receive fringe benefit fund contributions based on a minimum of eight (8) hours.

## ARTICLE IV
## HOLIDAYS

*Section 1.* Employees covered hereunder shall be entitled to observe the following legal holidays enacted by Act of Legislation:

| | |
|---|---|
| *New Year's Day* | *Labor Day* |
| *Washington's Birthday* | *Columbus Day* |
| *Patriots' Day* | *Veterans' Day* |
| *Memorial Day* | *Thanksgiving Day* |
| *Independence Day* | *Christmas Day* |

Employees who work on holidays listed above shall receive the applicable overtime rate as provided in Article III, Sec. 4 in this Agreement. The yard employee shall be entitled to eight (8) hours pay at the regular rate of pay for each of the above listed holidays. An employee must work his scheduled day before

and after a holiday in order to be eligible for holiday pay unless he was absent because of layoff, illness or other good cause.  If the holiday falls on a Friday, he shall be required to work the scheduled day before the holiday; if the holiday falls on Monday, he shall only be required to work the scheduled day after the holiday.

## ARTICLE V
## BUSINESS MANAGER-FIELD REPRESENTATIVE-STEWARD-FOREMAN

**Section 1.**  The Business Manager or Field Representative of the Union shall be allowed to visit the job during working hours.

**Section 2.**  A Steward shall be appointed or furnished on each project by the Union Representative of Local Union 1421.  The Steward shall be allowed a reasonable amount of time to check Laborers' Dues Books and report any violations of the Agreement to the Union.    The Steward shall work on the job until the completion of all work covered by the terms of this Agreement performed by the Employer and shall work all overtime performed by the Employer.  The Steward shall not be laid off unless he is the last laborer on the job other than the Foreman and Local Union 1421 shall be notified forty-eight (48) hours prior to the layoff, excluding Saturdays, Sundays and holidays.

The Employer shall give Local Union 1421 at least forty-eight (48) hours written notice excluding Saturdays, Sundays and holidays, before discharging the Steward in all cases; however, no discharge is to take place without a prior conference with the Union Representative within the time period specified above.

If either party does not attend the conference, their rights under this Section are waived.

In the event of a layoff , the Steward shall be notified as to the layoff not later than 3:30 PM or one hour before the layoff on the date of the layoff.  There shall be no non-working Stewards.

**Section 3.**  Foremen in charge of a demolition crew must be members of Local Union 1421 in good standing for a period not less than one (1) year and shall be covered by all the terms of this Agreement and shall receive not less than $1.00 per hour above the basic hourly rate.

7

## ARTICLE VI
## REPORTING TIME PAY

*Section 1.*  After a person has been hired and ordered to report to work at the regular starting time and no work is provided for him on the day that he is so ordered to report, he shall receive reporting time pay equivalent to two (2) hours at the regular straight time hourly rate.  If a person has been working regularly, and the Employer has failed to notify him not to report for work before leaving his residence, he shall be entitled to two (2) hours reporting time pay at the regular straight time hourly rate.  To be eligible for reporting time pay as provided herein, the employee must remain at the job site and be available for work unless told by the Employer that he may leave.

*Section 2.*  Employees shall furnish their Employer with current telephone or other contact at the start of each job, and advise the Employer of any subsequent change or changes in such contact during the course of the job.

*Section 3.*  Any employee who reports for work, and for whom work is provided regardless of the time he works, shall receive the equivalent of not less than four (4) hours pay at the regular straight time hourly rate provided he is available for work through such period.

*Section 4.*  Any employee who reports for work and who works for more than four (4) hours in any one (1) day shall receive the equivalent of not less than eight (8) hours pay at the regular straight time hourly rate provided that he is available for work until the end of that regular work day.

*Section 5.*  It is expressly provided, however, that if the employee leaves the job site without permission of the Employer or when a person refuses to work or continue to work, or when work stoppages brought about by a third party or parties prevent or make ill-advised, in the opinion of the Employer, the performance or continuance of work, or when weather makes work impractical that the Employee shall be obligated to pay the Laborers for the hours worked only.

It is further agreed and understood that if, during any shift, work is started and is stopped by the Employer due to an act of God which makes conditions too dangerous to work or due to a directive from an Owner, Authority, Agency of Government or other Third Party, the Employer shall be obligated to pay the Laborers' for the hours worked only.

8

*Section 6.* Where notification of the men is required under this Agreement to the effect that work shall not be performed on a particular day, notification of such fact to the Steward shall be sufficient notification to the men, provided the Steward is permitted enough time during working hours to notify the men.

## ARTICLE VII
## CHECK-OFF AND PAYROLL DEDUCTION

*Section 1.* Effective July 1, 2000 the Employer agrees to deduct the sum of eighty cents ($.80) per hour for each hour worked from the weekly wages, after taxes, of each employee covered by this Agreement. Effective December 1, 2000, the Employer agrees to deduct the sum of eight-five cents ($.85) per hour for each hour worked from weekly wages, after taxes, from each employee; provided, such employee has executed voluntary written authorization for such deductions to be allocated as follows:

a) Effective July 1, 2000, seventy-eight cents ($.78) shall be used as hourly membership dues to support the Local Unions and the Massachusetts Laborers' District Council. Effective December 1, 2000

Effective December 1, 2000, eighty-three cents ($.83) shall be used as hourly membership dues to support the Local Union and the Massachusetts Laborers' District Council. Fifteen cents ($.15) directly to Local Union 1421, P.O. Box 1238, Boston, MA 02205.

b) Two cents ($.02) of the amount provided in Section 1 ($.85) shall be used as a voluntary contribution payable to the Laborers' Political League (LPL) to enable the Massachusetts Laborers' District Council and its affiliated Local Unions to participate more fully in matters affecting the welfare of its members.

*Section 3.* A sample authorization for such deductions is as follows:

9

# Deduction Authorization

To all Employers by whom I am employed during the terms of the present or future collective bargaining agreements either by and between signatory contractor associations and the Massachusetts Laborers' District Council of the Laborers' International Union of North America, AFL-CIO and its affiliates, or by an Employer, not a member of said associations, which has an individual collective bargaining agreement with the Council and its affiliates.

## Dues Deduction

I hereby authorize my Employer to deduct from my wages each week eighty-three cents ($.83) per hour for each hour worked to constitute what are known as the hourly deductions as part of my membership dues for said week owing by me to the Local Union of which I am a member.

## Laborers' Political League Fund

I further authorize the Employer to deduct the sum of two cents ($.02) per hour for each hour worked as a voluntary contribution to the Laborers' Political League (LPL), which I understand constitutes a separate aggregate fund used for the purposes allowed under the Federal Election Campaign Act, 2 U.S.C., Sec. 441b.

This authorization and assignment shall become effective on or after July 1, 2000 and shall continue in full force and effect for a period not to exceed one (1) year or the life of the existing agreement between the said Union or the Council acting on its behalf and yourself, whichever occurs sooner, and for any subsequent similar period thereafter unless revoked by me within fifteen (15) days immediately preceding such contract term or

one (1) year, whichever occurs sooner. Notwithstanding the foregoing, the two cents ($.02) per hour deduction authorization for contribution to the LPL is subject to revocation at any time. The above revocation must be in writing, bear the date and my signature, and be delivered to the officers of the Local Union of which I am a member and to the Employer with whom I am then currently employed.

Such deductions shall be made from my earned pay on each regularly scheduled pay day and shall be remitted to the designated depository at the same time and along with the Health & Welfare, Pension, Training, Annuity, New England Laborers' Labor-Management Cooperation Trust, Legal Services, Unified Trust and Health & Safety Fund contributions. All such deductions shall be reported on one form, included in one check and sent along with all other Funds provided for in this Agreement.

| Employee | Social Security Number |
| --- | --- |

| Address | City/Town | State | Zip |
| --- | --- | --- | --- |

***Section 4.*** It shall be the sole responsibility of the Union to procure, pursuant to the provisions of Section 302(c) of the Labor-Management Relations Act of 1947, as amended, the signed individual authorization of every employee subject to this Agreement, both present and future. The Union shall indemnify and hold harmless each Employer from any claim arising under this Article including the furnishing of counsel to defend against any such actions.

***Section 5.*** Any Employer who fails to file his reports and remit the deductions when the same is due and payable shall be considered in violation of this Agreement and subject to the penalties outlined in Article XVIII.

### ARTICLE VIII
### CONDITIONS OF AGREEMENT

***Section 1.*** All wages due under this Agreement shall be paid on the regular pay day designated by the Employer in lawful U. S. currency, or check, once each week during working hours, before 4:00 PM. Payment shall be made showing employee's name, hours worked, amount earned, social security deduction, withholding tax, Employer's name and address. Any Employer paying wages to an employee by check shall do so during working hours, before 4:00 PM on Monday, Tuesday, Wednesday, or Thursday. If the regular pay day falls on a holiday that is not worked, the employee then shall be paid on the day before the holiday in question. Also, any Employer paying wages to an employee by check shall notify employees of a bank or other facility at which checks can be cashed, within reasonable proximity to the job site, without charge to the employee. The Employer shall withhold not more than three (3) days' pay in any one week. If an employee is discharged or laid off for any reason, his wages shall be paid in full before 3:30 PM and he shall receive a full day's pay for that day and he shall also be given a lay-off slip if requested by the employee for unemployment insurance at the time of the lay-off. If payment is not made expressly as provided herein, then the employee who has been terminated shall be paid for all waiting time until paid; waiting time to be paid at the regular eight (8) hour straight time rate for each day until paid, unless other arrangements have been made with the Business

11

Agents under whose jurisdiction the job falls. If any employee quits of his own accord, he shall receive wages for the time he worked on the next regular pay day.

**Section 2.** Raingear and slipover boots must be provided by the Employer if men are ordered to work in rain, mud, concrete or snow. Men cannot be terminated if they are unable to work because they are not furnished raingear and slipover boots. All tools, boots, hats and raingear and other implements and equipment, other than those customarily furnished by employees, when necessary to the performance of any of the work covered by this Agreement, shall be furnished by the Employer and shall remain the property of the Employer when not in use or upon leaving its employ. Each employee may be required to sign a receipt for such equipment at the time he receives it, and he shall be liable for the cost of replacement of any equipment which is lost or otherwise not returned to the Employer. Gloves and glasses must be furnished by the Employers to the Burners.

**Section 3.** *Clothes Room.* The Employer shall provide a clean, comfortable, heated shed or room, of suitable size for the laborers to change their clothes and partake their lunch. Such place shall not be used to store tools, equipment or materials.

**Section 4.** *Drinking Water* The Employer shall provide clean drinking water with paper cups to each employee on the construction site, in accordance with applicable Federal and State Laws. The water shall be changed once in the morning and once in the afternoon.

**Section 5.** *Toilets* Clean, sanitary toilets shall be provided for the employees' use in accordance with applicable Federal and State Laws.

**Section 6.** *Telephones* A phone shall be made available on the job site for the employees' use in case of emergency, if telephone service is available.

**Section 7.** *Lost Time Because of Accidents* There shall be no lost time on the day of a minor injury for the employee obliged to receive medical attention and treatment, provided he returns to work within a reasonable time on that day. Employees seriously injured on the job who have to obtain medical treatment, shall not be required to work on the day of the injury to receive payment of wages for that day. The injured employee or steward will notify the Employer on the date of the injury of any injury which occurs on the job and shall furnish the name and address of the physician consulted for medical attention as provided herein.

When an employee is seriously injured on the job, the steward or the foreman shall be permitted to notify the Union of the injury.

***Section 8.*** *Quitting Time*  Each employee shall be given sufficient time at the end of the day to put away his tools and be at the clothes room or change shack at quitting time.

***Section 9.*** *Travel and Subsistence*  When working on out-of-town jobs, all employees covered by this Agreement shall be paid traveling expenses in excess of seventy-five cents ($.75) fare limit and also when the Employers request an employee to go to work to any out-of-town job and the traveling time to reach such a job is three quarters of an hour or more, the Employer shall pay half of traveling time to reach such job at the straight time rate.  Whenever the Employers require the employees to remain n the City or Town where the job is located, the Employers shall pay room and board of the employees.

***Section 10.***  There shall be a coffee break of ten (10) minutes in the morning and ten (10) minutes after lunch which shall be scheduled by the Supervisor.

## ARTICLE IX
## MASSACHUSETTS LABORERS' HEALTH & WELFARE FUND

Each Employer agrees to pay the sum reflected in Addendum A of this Agreement, per hour for each hour worked by each employee, covered by this Agreement to the Massachusetts Laborers' Health & Welfare Fund.  Said sum will be paid into said Fund not later than the twentieth (20th) day of each and every month for hours worked by said employees up to the end of the last complete payroll of the preceding calendar month.  The said Fund will be administered by a Board of Trustees selected and appointed under the provisions of the Trust Agreement executed by the Union and the Employers.  Said Trust Agreement shall conform to the Labor-Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States, the Commonwealth of Massachusetts and the State of New Hampshire.  The said Fund will be used to purchase accident and sickness disability insurance and hospitalization, medical and surgical benefits and/or other welfare benefits of a similar nature for the said employees as provided in the said Trust Agreement.

The Union reserves the right to remove the employees whose wages, hours and working conditions as set froth in this Agreement from any job for which the Employer has failed to remit to the aforementioned Health & Welfare Fund monies due to the Fund within the time for payment thereof, as determined by the

13

Board of Trustees acting under the authority of the Agreement and Declaration of Trust under which the Fund operates.

The failure to contribute by the Employer to the said Health & Welfare Fund, as provided herein, for the purpose of the remedy the Union may pursue, is covered in Article XVIII herein. The Massachusetts Laborers' Health & Welfare Fund shall meet the requirements of all Federal and State Laws regarding the same, including the Internal Revenue Service.

# ARTICLE X
## MASSACHUSETTS LABORERS' ANNUITY FUND

*Section 1.* There shall be established, by an appropriate Agreement and Declaration of Trust, pursuant to Section 302(c) of the National Labor Relations Act, as amended, the Massachusetts Laborers' Annuity Fund.

*Section 2.* Each Employer subscribes to and agrees to be bound by the above Agreement and Declaration of Trust and any amendments thereto and ratifies and approves all actions of the Trustees within the scope of said Trust Agreement.

*Section 3.* Each Employer agrees to pay the sum reflected in Addendum A of this Agreement, per hour for each hour worked by each employee, covered by this Agreement, to the Massachusetts Laborers' Annuity Fund. Said sums will be paid into said Fund not later than the twentieth (20th) day of each and every month for hours worked by said employees up to the end of the last complete payroll of the preceding calendar month. Payment shall be made in one check and on the same form furnished by the Massachusetts Laborers' Benefit Funds. The said Fund will be administered by a Board of Trustees selected and appointed under the provisions of the Trust Agreement executed by the Union and the Employers. Said Trust Agreement shall conform to the Labor-Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States, the Commonwealth of Massachusetts and the State of New Hampshire.

*Section 4.* Members of the Association and Employers subscribing to the Trust Agreement, when working outside the jurisdictional area of this Agreement in areas where they have no contractual obligation to contribute to an annuity fund, shall contribute the same amount in the same manner as set forth above to the "Massachusetts Laborers' Annuity Fund" for each laborer when said laborer is

sent and put to work by the Employer from the territorial jurisdiction set forth in Article I.

**Section 5.** Failure to contribute to the Fund shall be a violation of this Agreement. The Union and the Employer mutually recognize the requirement that contributions to this Fund be made on a current basis by all Employers who have made one or more contributions to the Fund or have entered into an agreement with the Union requiring such contributions.

**Section 6.** If an audit by the Trustees or their representatives determines that an Employer has not correctly reported the hours worked by his laborers, the Employer, in addition to other remedies provided in the Trust Agreement, shall be liable to the Fund for the cost of auditing his payroll records and for interest at the rate of ten percent (10%) per annum from the date when payment was due to the date when payment was made.

**Section 7.** The Fund shall be used to provide benefits as determined by the Trustees in accordance with the terms of the Trust. The failure to contribute by the Employer to the said Annuity Fund, as provided herein, for the purpose of the remedy the Union may pursue, is covered in Article XVIII herein. The Massachusetts Laborers' Annuity Fund shall meet the requirements of all Federal and State Laws regarding the same, including the Internal Revenue Service.

## ARTICLE XI
## MASSACHUSETTS LABORERS' PENSION FUND

Each Employer agrees to pay the sum reflected in Addendum A of this Agreement, per hour for each hour worked by each employee, covered by this Agreement to the Massachusetts Laborers' Pension Fund. Said sum will be paid into said Fund not later than the twentieth (20th) day of each and every month for hours worked by said employees up to the end of the last complete payroll period of the preceding calendar month. The Fund will be administered by a Board of Trustees selected under, and subject to the provisions of a Trust Agreement and Plan entered into by the Union and the Employers. The Plan and the Trust shall conform to the Labor-Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States, the Commonwealth of Massachusetts and the State of New Hampshire.

The Trust and Plan at all times shall be a "qualified" Trust and Plan, as defined by Section 401 of the Internal Revenue Code. The Plan and the Trust shall be created and administered, subject to modification, change of methods of

15

administration and practices as may be required, to the end at all times contributions by the Employers to the Fund shall be deductible as an ordinary expense of doing business in the computation of Federal Income Tax of the Employers.

The failure to contribute by the Employer to the said Pension Fund, as provided herein, for the purpose of the remedy the Union may pursue is covered in Article XVIII herein. The Massachusetts Laborers' Pension Fund shall meet the requirements of all Federal and State Laws regarding the same, including the Internal Revenue Service.

## ARTICLE XII
## NEW ENGLAND LABORERS' TRAINING TRUST FUND

Each Employer agrees to pay the sum reflected in Addendum A of this Agreement, per hour by each employee covered by the terms of this Agreement, to a Training Fund known as New England Laborers' Training Trust Fund. Said sum will be paid into said Fund not later than the twentieth (20th) day of each and every month for hours worked by said employees up to the end of the last complete payroll period of the preceding calendar month. The Fund will be administered by a Board of Trustees selected under, and subject to the provisions of, a Trust Agreement and Plan entered into by the Union and the Employers. The Plan and Trust shall conform to the Labor-Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States and the Commonwealth of Massachusetts and the State of New Hampshire. The Trust and Plan at al times shall be a "qualified" Trust and Plan as defined by Section 401 of the Internal Revenue Code. The Plan and Trust shall be created and administered, subject to modification, change of methods or administration and practices as may be required to the end that at all times contributions by the Employers to the Fund shall be deductible as an ordinary expense of doing business in the computation of Federal Income Tax of the Employers.

The failure to contribute by the Employer to the said Training Fund as provided herein, for the purpose of the remedy the Union may pursue, is covered in Article XVIII, herein. The New England Laborers' Training Trust Fund shall meet the requirements of all Federal and State Laws regarding the same, including the Internal Revenue Service.

# ARTICLE XIII
## MASSACHUSETTS LABORERS' LEGAL SERVICES FUND

*Section 1.* Each Employer agrees to pay the sum reflected in Addendum A of this Agreement, per hour for each hour worked by each employee, covered by this Agreement to the Massachusetts Laborers' Legal Services Fund. Said contributions will be paid into such Fund not later than the twentieth (20th) day of each and every month for the hours worked by said employees up to the end of the last completed payroll period of the preceding calendar month. The failure to contribute to this Fund by the Employer as provided herein shall be subject to the provisions of Article XVIII hereof. The Massachusetts Laborers' Legal Services Fund shall meet the requirements of all Federal and State Laws regarding the same, including the Internal Revenue Service.

*Section 2.* It is understood by the parties to this Agreement that the Legal Services Trust and Plan to be established shall: (a) conform to the requirements of
Section 302 of the Labor-Management Relations Act as amended and (b) the Employer will be able to deduct said contributions as an ordinary and necessary business expense.

# ARTICLE XIV
## NEW ENGLAND LABORERS' LABOR-MANAGEMENT COOPERATION TRUST

*Section 1.* Each Employer agrees to pay the sum reflected in Addendum A of this Agreement, per hour for each hour worked by an employee covered by this Agreement to the New England Laborers' Labor-Management Cooperation Trust Fund.

*Section 2.* Said sum will be paid into said Fund not later than the twentieth (20th) day of each month for hours worked by said employees up to the end of the last complete payroll period of the preceding calendar month. The Fund will be administered by a Board of Trustees selected under, and subject to the provisions of a Trust Agreement and Plan entered into by the Union and the Employer and others.

*Section 3.* The Plan and Trust conform to the Labor-Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States and the Commonwealth of Massachusetts. The Trust and the Plan at

all times shall be a "qualified" Trust and Plan, as defined by Section 401 of the Internal Revenue Code. The Plan and Trust shall be created and administered, subject to modification, change of methods of administration and practices as may be required to, the end that at all times contributions by the Employers to the Fund shall be deductible as an ordinary and necessary expense of doing business in the computation of Federal Income Tax of the Employers.

**Section 4.** The failure to contribute by the Employer to the said New England Laborers' Labor-Management Cooperation Trust Fund, as provided herein, for the purpose of the remedy the union may pursue, is covered in Article XVIII herein.

## ARTICLE XV
## NEW ENGLAND LABORERS' HEALTH AND SAFETY FUND

**Section 1.** Each Employer agrees to pay the sum reflected in Addendum A of this Agreement, per hour worked by each employee covered by the terms of this Agreement to the New England Laborers' Health & Safety Fund.

**Section 2.** Said sum shall be paid into the Fund no later than the twentieth (20th) day of each and every month for hours worked by said employees up to the end of the last complete payroll period of the preceding calendar month. The Fund will be administered by a Board of Trustees selected under and subject to the provisions of a Trust Agreement and Plan entered into by the Union and the Employers.

**Section 3.** The Plan and Trust shall conform to the Labor-Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States and states where this Agreement applies. The Trust and Plan at all times shall be a "qualified" Trust and Plan as defined by Sec. 401 of the Internal Revenue Code. The Plan and Trust shall be created and administered, subject to modification, change of methods or administration and practices as may be required to the end that at all times contributions by the Employers to the Fund shall be deductible as an ordinary expense of doing business in the computation of Federal Income Tax of the Employers.

**Section 4.** The failure to contribute by the Employer to the said Health & Safety Fund, as provided herein, for the purpose of remedy the Union may pursue, as covered in Article XVIII herein. The New England Laborers' Health and

Safety Fund shall meet the requirements of all Federal and State Laws regarding the same, including the Internal Revenue Service.

# ARTICLE XVI
## MASSACHUSETTS LABORERS' UNIFIED TRUST

***Section 1:***   Each Employer agrees to pay the sum reflected in Addendum A of this Agreement, per hour worked by each employee covered by the terms of this Agreement to a fund known as the "Massachusetts Laborers' Unified Trust".

***Section 2:***   Said sums will be paid into said Fund not later than the twentieth (20th) day of each and every month for hours worked by said employees up to the end of the last complete payroll period of the preceding calendar month. The Fund will be administered by a board of Trustees selected under and subject to the provisions of a Trust Agreement and plan entered into by the Union and the Employers. The plan and trust shall conform to the Labor-Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States and the Commonwealth of Massachusetts. The trust and plan at all times shall be an exempt trust and plan, as defined by Section 401 of the Internal Revenue Code. The plan and trust shall be created and administered, subject to modification, change of methods of administration and practices as may be required, to the end that at all times contributions by the Employers to the Fund shall be deductible as an ordinary expense of doing business in the computation of federal income tax of the Employers.

***Section 3:***   There shall be a total of four (4) Trustees to constitute the Board of Trustees to administer the Fund. Said Trustees to be appointed as follows:  Two (2) Trustees shall be appointed by the Massachusetts Laborers' District Council and two (2) Trustees shall be appointed by the Association. The representatives on the Board of Trustees shall at all times be equally divided among Union and Management. Each of the appointing parties shall have the power to remove, replace and appoint successors as Trustees appointed by them.

***Section 4:***   The failure to contribute by the Employer to the said Unified Trust, as provided herein, for the purpose of the remedy the Union may pursue, is covered in Article XXI herein. The Massachusetts Laborers' Unified Trust shall meet the requirements of all Federal and State Laws regarding the same, including the Internal Revenue Service.

19

# ARTICLE XVII
## TERRITORIAL AND WORK JURISDICTION
## COVERAGE AND DESCRIPTION OF WRECKING LABORERS' WORK

*Section 1.* It is agreed that the Wrecking Laborers' work shall include but not be limited to: the wrecking or dismantling of buildings and all structures. Breaking away roof materials, beams of all kinds, with use of cutting or other wrecking tools as necessary. Burning or otherwise cutting all steel structural beams. Breaking away, cleaning and removal of all masonry and wood or metal fixtures for salvage or scrap. The operation of all small bulldozers, loaders, backhoes and forklifts as needed to breakup, load, move or stockpile material, debris and salvage. The operation of all tools, power or manual, for the completion of the wrecking laborers' work including torches, saws and power hammers whether electric or hydraulic or compressed air. All hooking on and unhooking and signaling when materials for salvage or scrap are removed by crane or derrick. The removal and disposal of asbestos. All removal, including the loading and unloading of materials carried away from the site of wrecking. All work in salvage or junk yards in connection with cutting, cleaning, storing, stockpiling or handling of materials. All cleanup of debris, burning, backfilling, and landscaping of the site of wrecked structure. All work required for workman-like demolition in buildings or structures being demolished or to adjoining property or structures, whatever it might be, or any work in connection therewith.

It is further agreed that all removal, partial demolition, remodeling and interior gutting of buildings shall be the work of the wrecking laborer as well as the removal of the whole or part of any systems or part of a structure such as, but not limited to, walls, floors, ceilings, windows, flooring, all dismantling and removal of mechanical systems including but not limited to: electrical plumbing, sprinkler and heating. The dismantling and removal of all elevators and escalators including motors, cages, rails and switch gear shall be the work of the wrecking laborer. The removal of all roof systems including but not limited to tar and gravel, asphalt shingle and slate shall be the work of the wrecking laborer. The erection of all scaffolding, ramps, chutes for debris and protective aprons shall be the work of the wrecking laborer.

*Section 2.* It is further agreed that the wrecking laborer's work includes the wrecking, dismantling and removal of any structure of any kind or any part or system thereof in whole or in part whether the complete tearing down and removal of an entire structure or the alteration or partial removal of a structure or the whole or part of any system thereof including the making of floor openings, wall

20

openings, roof openings, slab openings and foundation openings as well as excavation of same.

Any and all work related to the demolition which serves to provide safety protection for the work performed or the workers including firewatch when required, shall be the work of the wrecking laborer.

The removal of asbestos, lead paint and all hazardous and toxic materials, oil and fuel tanks and other contaminates. The unloading, handling, distribution, erection and dismantling of all scaffolding is the work of the Building Wreckers.

The building and placing of all protective devices and barriers, barricades, rails, chutes, brows, staging, fencing, shoring, bracing all as they are related to or are necessary to perform the demolition or dismantling work while the work is being executed and to provide a safe environment both before, during and after the demolition work is executed shall be the Wrecker's work.

*Section 3.*   Laborer's work shall include but not be restricted to the following:

<u>Warehouse:</u>   Drum identification and inventorying, drum sampling, off-loading drum contents, draining drums, drum removal, equipment cleaning and packaging (transformers, parts, etc.), building washing and decontamination, lab chemical handling and packaging, building of diked area for draining and cleaning operations, spreading of adsorbents, emptying of spill pans, loading of drums onto transportation equipment, feeding into drum crusher, hose handling, covering truck beds with plastic, hosing off trucks.

<u>Buried Drums:</u>   Working from trench, uncover drums, establish conditions of drums, overpacking drums, applying adsorbents to leaked materials, shoveling used adsorbents and contaminated (stained) soil into drums, opening and sampling drums, labeling, monitoring work area, bulking liquid from drums.

<u>Tanks:</u>   Opening man holes, vacuuming out liquid residues, entering and shoveling out tank/heel/sludges, decontaminating tank/washing, cut up tank using cold cut saws and shears, compacting small thin walled tanks.

<u>General Site Work:</u>   Digging for buried lines, sewers, etc., erecting fence, moving portable pumps and hoses, filling in trenches, demucking sewer or drainage trenches, removal of miscellaneous steel, wood, trash, etc., building sandbag dikes, lining containment areas, clearing brush, cutting trees, operating air monitoring and sampling equipment, cleaning, repairing and maintenance of personal protective clothing and equipment, filling and refilling air tanks, filling slurry wall trench with cement/bentonite mixture, grout, etc., building dry wells,

revegetation, installing erosion curtains, cleaning culverts, spreading rock/gravel for access roads, all general site cleanup operations and decontamination procedures for all equipment and/or personnel.

*Section 4.*  The snapping of wall ties and removal of tie rods.  Handling, placing and operation of the nozzle, hoses and pots or hoppers on sandblasting or other abrasive cleaning.  The jacking of slip forms, and all semi and unskilled work connected therewith.  The protection and all related safety procedures for the above-mentioned work.

*Section 5.*  It is further agreed that where the Employers hire employees under Section 6(g) of Article II above, the wages, fringe benefit contributions, excluding dues deductions, terms and conditions of the collective bargaining agreement between the Massachusetts Laborers' District Council and Eastern Massachusetts Building Wreckers.

## ARTICLE XVIII
## FAVORED NATIONS CLAUSE

The Union agrees that if, during the life of this Agreement, it or its Locals grant to any other Employer on work covered by this Agreement, any better terms or conditions than those set forth in this Agreement, such better terms or conditions shall be made available to the Employer under this Agreement and the Union or its Local shall immediately notify the Employer of any such concession.

## ARTICLE XIX
## DELINQUENT PAYMENTS

*Section 1.*  Employers who are delinquent in their payments to the Health & Welfare, Pension, Legal Services, Annuity, New England Laborers' Labor-Management Cooperation Trust, Training, Unified Trust and New England Health & Safety Funds shall not have the privilege of employing laborers under the terms of this Agreement if such payments have not been made after written notice, sent by registered mail, return receipt requested,, of such delinquency is given by the Union and seventy-two (72) hours have elapsed since such notice.  All employees affected by such delinquency to any of the above-mentioned Funds, and who have lost work as a result thereof, shall be paid their normal wages by the delinquent Employer, until said delinquency is cured and the employees resume their work.

Once an Employer has been adjudged a delinquent by any of the above-mentioned Fund Trustees, he shall, in addition to remitting to the Funds for his

past delinquencies, be required to make his current payments on a weekly basis and further furnish a ten thousand dollar ($10,000) surety bond to the Trustees of each respect Fund as listed above. All attorney's fees, sheriff's costs, accounting and court costs involved to collect delinquent payments from the delinquent Employer must be borne fully by the Employer involved.

***Section 2.*** In accordance with Section 5.02(g)(2) of ERISA, as amended, the Trustees do establish the rate of interest to be paid by Employers on delinquent contributions to be the rate prescribed under Section 6621 of the Internal Revenue Code of 1954 (currently ten percent [10%] per annum); and further, liquidated damages shall be assessed in an amount of twenty percent (20%) of the amount of the delinquency, or such higher percentage as may be permitted under Federal or State Law, plus reasonable attorney's fees and costs of the action.

### ARTICLE XX
### SEVERAL LIABILITY

***Section 1.*** The obligation of each Employer member of the Associations shall be several and not joint. This Agreement shall be binding upon each Employer signatory hereto and its successors and assigns, and no provisions contained or incorporated herein shall be nullified or affected in any manner as a result of any consolidations, sale, transfer, assignment, or any combination or other disposition of the Employer.

***Section 2.*** The Massachusetts Laborers' District Council, a party to this Agreement, shall not be held responsible for any unauthorized act committed by any affiliated Local Union or members thereof, unless the said Massachusetts Laborers' District Council has ordered or ratified the same or condoned such act after notice thereof from either of the Associations. The Massachusetts Laborers' District Council agrees that upon the receipt of notice from either Association, parties to this Agreement, of any unauthorized act by a Local Union, it will exercise all of its authority to correct the same and furnish evidence thereof to the Association.

***Section 3.*** The obligation of Local Union 1421, affiliated with the Massachusetts Laborers' District Council, shall be several and not joint.

***Section 4.*** The Eastern Massachusetts Building Wreckers' Association, Inc. shall not be responsible for any unauthorized act committed by one of its members unless either of the Associations has ordered, ratified or condoned such act after

notification thereof from the Council. The Associations agree that upon the receipt of such notice from the Council of any unauthorized act of a member contractor, it will exercise all of its authority to correct the same and furnish evidence thereof to the Council.

## ARTICLE XXI
## NO STRIKE CLAUSE

There shall be no strike or lockouts during the term of this Agreement, except that if there is a strike by any other Union representing the employees, it shall not be a violation of this clause if the employees covered by this contract refuse to enter the job site during the strike.

## ARTICLE XXII
## PROCEDURE FOR ADJUSTMENT OF DISPUTES AND ARBITRATION

*Section 1.* It is the good faith intention of the parties hereto that, by the execution of this Agreement, industrial peace shall be brought about and that the Union and the Employer shall cooperate to the end that work may be done efficiently and without interruption.

*Section 2.* If any difference of opinion or dispute should arise between the parties as to the interpretation or application of this Agreement, other than a jurisdictional dispute, a complaint will be made by the aggrieved party immediately. In each case, the first attempt at settlement shall be made between the Business Manager of Building Wreckers' Local Union 1421 and the contractor-employer or his representative.

*Section 3.* Disputes which cannot be adjusted between the contractor-employer and the Local Union within forty-eight (48) hours after they arise shall be referred to the Eastern Massachusetts Building Wreckers' Association, Inc. and the Massachusetts Laborers' District Council of the Laborers' International Union of North America.

*Section 4.* If, within forty-eight (48) hours, no adjustment or settlement is resolved by the procedures of Section 3 above, either party may submit the issue to arbitration.

*Section 5. Arbitration Procedure*  Both parties to this Agreement agree to settle all disputes or grievances involving or arising out of the interpretation or application of the provisions of this Agreement, except for jurisdictional disputes or as otherwise provided herein, to an Arbitration Board composed of two (2) from each party.  The party submitting the issue to arbitration shall notify the other party at once in writing, and a meeting to consider and to act in the matter shall take place within three (3) days.  Work is to be continued during the arbitration.  If a tie vote exists, then an umpire shall be chosen by them, to whom the matter in dispute shall be referred, whose decision shall be final and binding on both sides.  If an impartial umpire cannot be agreed upon within five (5) days, the arbitrator shall be appointed by the American Arbitration Association and the arbitration will be conducted under the voluntary labor arbitration rules of the American Arbitration Association.  The arbitrator shall not have the power to amend, add to or alter the provisions of this Agreement and his decision will be final and binding on both sides.  The cost of the arbitration will be equally borne by both parties.

*Section 6.*    Nothing contained herein shall require the Massachusetts Laborers' District Council to process any Local Union or employee grievance which, in its opinion, would be without merit, and no employee shall have the right to arbitrate his grievance should the Union deem it without merit.

## ARTICLE XXIII
## APPLICABILITY OF AGREEMENT

All applicable work within the territorial jurisdiction covered by this Agreement shall be performed under the terms and conditions of this Agreement.

## ARTICLE XXIV
## FEDERAL HEALTH INSURANCE LAW

In the event a new federal health insurance law becomes effective during the term of this Agreement, the parties agree to meet and reopen this Agreement to make any changes necessitated by the law and to negotiate other provisions as may be appropriate.  In the event the parties are unable to agree upon the changes efficiently and without interruption.

## ARTICLE XXV
### TERMINATION OF AGREEMENT

This Agreement will expire at midnight on June 30, 2004, but if neither party to this Agreement gives notice in writing sixty (60) days prior to the expiration date to the other party on our before July 1, 2004, that it desires a change after July 1, 2004, then this Agreement will continue in effect until July 1, 2005 and so on each year thereafter unless on or before the sixty (60) days prior to July 1, on any year thereafter, a notice is given by either party that it desires to change, modify or terminate this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be signed by their duly authorized representatives on this _____ day of July, 2000.

*The Eastern Massachusetts Building Wreckers'*
*Association, Inc.*
135 N. Beacon Street
Watertown, MA  02272

*Massachusetts Laborers' District Council Of*
*The Laborers' International Union Of North*
*America*
i/b/o Building Wreckers' Local 1421, Bostᵒ

*Sam Brooks*

**Paul J. McNally**
**Business Manager**

Date: ___8/30/01___

Date: ___8/31/01___
B.A. Locc 1 1421

Witnessed:

Armand E. Sabitoni, General Secretary-Treasurer and
New England Regional Manager

26

## ASBESTOS REMOVAL MEMORANDUM

This Special Memorandum was entered into on July 12, 1991, by and between the undersigned parties and shall apply on all asbestos removal projects.

1. Masks and all other equipment used in the removal of asbestos must meet the requirements of the regulations governing the industry.

2. Employees will be required to observe the regulations when leaving encapsulated areas for any reason.

3. Employer must provide shower facilities with hot water.

4. When necessary, lunch periods will be staggered to allow employees time for clean up.

5. All employees laid off after 5:00 PM, must be paid by noon of the next day.

6. If a shift ends between 12:00 Midnight and 5:00 AM, consideration must be given to transportation for the employees.

7. Employer will furnish lockers or other means to safeguard the personal belongings of employees.

This Memorandum shall be in full force and effect for a period of three (3) years from the date of signature and shall continue from year to year thereafter unless sixty (60) days Notice of Termination is given by either party in accordance with the terms of Article XXV of the 1994-1997 Agreement.

The Eastern Massachusetts Building
Wreckers' Association, Inc.

*Sam Brooks*

Massachusetts Laborers' District
Council

*Paul J. McNally*
Business Manager

27

Memorandum of Understanding
Drug Abuse Prevention and Detection

The parties recognize the problems which drug abuse have created in the construction industry and the need to develop drug abuse prevention programs. Accordingly, the parties agree that in order to enhance the safety of the work place and to maintain a drug free work environment, individual employers may require applicants or employees to undergo drug screening. The parties agree that if a screening program is implemented by an individual Employer, the following items have been agreed upon by Labor and Management:

1. It is understood that the use, possession, transfer, or sale of illegal drugs, narcotics, or other unlawful substances is absolutely prohibited while employees are on the Employer's job premises or while working on any site in connection with work performed under the applicable agreement.

2. All applicants or newly hired employees will undergo a drug screen at a facility agreed upon by the Employer and the Union. The Employer agrees to pay each applicant or employee who takes and passes the drug screen test for all the time it takes to undergo the drug screen up to a maximum of two (2) hours travel time plus lab time. This paragraph shall not apply to applicants who have worked for the Employer within the prior eighteen (18) months of the date of application for reemployment.

3. Applicants not passing the drug screen will not be placed on the Employer's payroll or receive any compensation. Employees not passing the drug screen will be removed from the Employer's payroll. The Employer agrees to pay the cost for administering the drug screen.

4. The Employer may require that an employee be tested for drugs where the Employer has reasonable cause to believe that the employee is impaired from performing his/her job. Observation must be made by at least two (2) persons, one of whom shall be a Union employee or representative. This provision shall be applied in a non-discriminatory manner. Supervisors will administer the program in a fair and confidential manner.

The results of the test shall not be made known to any person other than the employee and the employee's Supervisory or other authorized Employer's representative.

For employees who refuse to take a test where the prerequisites set forth in this paragraph have been met, there will be a rebuttable presumption that the test result would have been positive for an unlawful substance.

5. An Employer may require that an employee who contributed to an accident be tested for drugs where the Employer has reasonable cause to believe that the accident resulted from drug usage.

6. There will be no random drug testing by the signatory Employer.

7. It is understood that the unsafe use of prescribed medication, or where the use of prescribed medication impairs the employee's ability to perform work, is a basis for removal.

8. A sufficient amount of a sample shall be taken to allow for an initial test and a confirmation test. The initial test will be by Enzyme Multiplied Immuncassay Technique (EMIT). In the event a question or positive result arises from the initial test, a confirmation test must be utilized before final action can be taken against the employee or applicant. The parties recognize that in most cases the employer will not be aware of any positive results arising from an initial test until after the results of the confirmation test are made known; however should the employee be suspended based on any initial test results and the confirmation test indicates that the initial test was erroneous and the confirmation test is negative, the employee shall be reinstated with all lost earnings. The confirmation test will be by Gas Chromatography Mass Spectrometry (GC/MS). Testing standards for both the initial test and confirmation test will be those established by the National Institute of Drug Abuse. Confirmed positive samples will be retained by the testing laboratory in secured long-term frozen storage for a minimum of one (1) year. Handling and transportation of each sample must be documented through strict chain of custody procedures.

9. Present employees, if tested positive, shall have the prerogative for a rehabilitation program at the employee's expense. When such program has been successfully completed, the Employer shall not discriminate in any way against the employee. If work for which the employee is qualified exists, he or she shall be reinstated.

10. Any dispute which arises under this drug policy shall be submitted to the grievance and arbitration procedure set forth in the Agreement.

11. In the event an individual Employer is required, as a condition of contract award, to abide by the terms and conditions of an owner's drug policy, the Employer will notify the interested unions in writing prior to implementing such policy.

12. The establishment or operation of this policy shall not curtail any right of an employee found in any law, rule, or regulation. Should any part of this policy be found unlawful by a court of competent jurisdiction or a public agency having jurisdiction over the parties, the remaining portions of the policy shall be un-affected and the parties shall enter negotiations to replace the affected provision.

13. The Employer shall indemnify and hold the Union harmless against any and all claims, demands, suits, or liabilities that may arise solely out of the Employer's application of the Substance Abuse Program.

14. This policy became effective JUNE 1, 1991.


For the Association:                        For the Union:

_Samuel S. Burke, Pres._                    _Paul P. McNally_


_____                     _____


Date: ___8/30/01___                         Date: ___8/28/01___


30

SCHEDULE I
SIGNATORY BUILDING WRECKERS
2000

U.S.A. Leasing
100 Corporate Place, Suite 505
Peabody, MA 01960

A & T Dismantling
100 Corporate Place, Suite 505
Peabody, MA 01960

M.R.P. Site Development, Incorporated
100 Corporate Place, Ste. 505
Peabody, MA 01960

No. American Site Developers
P. O. 326
Allston, MA 02134

Urban Demolition, Inc.
25 Proctor Street
Roxbury, MA 02119

No. American Waste Disposal Co., Inc.
P. O. Box 390
Allston, MA 02134

CWC Builders, Inc.
One Boston Place
Boston, MA 02160

Cleveland Wrecking Co.
702 Chester Pike
Sharon Hill, PA 19079

Guaranteed Clean Air, Inc.
5415 Tonnelle Avenue
No. Bergen, NJ 07047

Deprizio Paving & Construction, Inc.
248 Everett Avenue
Chelsea, MA 02150

The Duane Corporation
P. O. Box E
Braintree, MA 02184

Grant Brothers Crane Service, Inc.
P. O. Box 54
Readville, MA 02137

L.V.I. Environmental
195 Corporation Way
Medford, MA 02155

Invirex Demolition
21-55th Avenue
Long Island City, NY 11101

George E. Lyons Jr.
40 Sturtevant Street
Dorchester, MA 02122

Manafort Bros., Inc.
New Britain Avenue
Plainville, CT 06062

Boston Demolition Inc.
39 Kingman Avenue
Revere, MA 02151

Mac's Renovation Service
P. O. Box 873
Lynnfield, MA 01940

J. M. Cashman, Inc.
77 Federal Avenue
Quincy, MA 02169

Edifice Wrecks
135 No. Beacon Street
Watertown, MA 02127

Eastern Demolition Corp.
4 Chapin Road
Upton, MA 01568

Northeast Renovation Corp.
46 Arlington Street
Chelsea, MA 02150

So. Easton Crane Corp.
Box E 141
So. Easton, MA 02375

Rubble Makers of MA,  Inc.
319 West Street
Braintree, MA 02184

A.C.T. Abatement Corp.
255 Erving Avenue
Lawrence, MA   01842

Dockside Dismantling Corp.
256 Salem Street
Woburn, MA   01801

Nova Contractors, Inc.
19 Philips Street
Medfield, MA   02052

Mac's Contracting
41 Harrison Avenue
Saugus, MA   01906

Wayne & Co., Inc.
13 Bennett Street
Medford, MA 02155
Wrecking Corp. of America
St. Louis, Inc.
3700 Wheeler Avenue
Alexandria, VA 22304

Kimmins Industrial Service Corp.
Second Avenue
Tampa, Florida 33605

Mystic Building Wrecking Co.
265 Carter Street
Chelsea, MA 02150

D.M.L. Corporation
P. O. Box 326
Phoenix, MD 21131

O'Rourke Heavy & Highway
1530 Tremont Street
Cincinnati, OH 45214

Superior Abatement, Inc.
1275 Bloomfield Avenue
Fairfield, N.J.   07004

Costello Dismantling
2 Rocky Gutter
Middleboro, MA   02346

Costello Dismantling
2 Rocky Gutter
Middleboro, MA   02346

R.S. Guerette Corp.
74 Fayette Street
Cambridge, MA   02139

IDM Environmental
153 Main Street
Medford, MA   02155

EASTERN MASSACHUSETTS BUILDING WRECKERS ASSOCIATION, INC.

AND

MASSACHUSETTS LABORERS' DISTRICT COUNCIL

SIDE LETTER OF AGREEMENT

The Massachusetts Laborers' District Council and its member locals (the "Union") and the Eastern Massachusetts Building Wreckers' Association, Inc. (the "Association") hereby agree that the understanding expressed below shall apply to the terms of the collective bargaining agreement between the two parties.

Owners and Contractors signatory to the agreement between the Massachusetts Laborers' District Council of the Laborers' International Union of North America, AFL-CIO and the Associated General Contractors of Mass., Inc., the Labor Relations Division of Construction Industries of Massachusetts, Inc. and the Building Trades Employers' Association of Boston and Eastern, MA., Inc. shall be in compliance with the subcontracting language of that agreement when they award work to a contractor signatory to the attached agreement.

The Eastern Massachusetts Building
Wreckers' Association, Inc.

Massachusetts Laborers' District
Council of the Laborers' International
Union of North America, AFL-CIO
and its member Locals

By its duly authorized Representative:

*Samuel S. Brooks, Pres.*

**Samuel S. Brooks**

By its duly authorized Representative

*Paul J. McNally*

**Paul J. McNally**
Business Manager

Date:  _8/30/01_

Date:  _8/27/01_

# ADDENDUM A
## WAGE RATES AND CLASSIFICATIONS

|  | 7/1/00 | 12/1/00 | 6/1/01 | 12/1/01 | 6/1/02 | 12/1/02 | 6/1/03 | 12/1/03 |
|---|---|---|---|---|---|---|---|---|
| Increases | 0.55 | 0.60 | 0.55 | 0.55 | 0.60 | 0.65 | 0.85 | 0.85 |
| Group 1 | 21.65 | 21.70 | 22.25 | 22.80 | 23.40 | 24.05 | 24.90 | 25.75 |
| Group 2 | 21.90 | 21.95 | 22.50 | 23.05 | 23.65 | 24.30 | 25.15 | 26.00 |
| Group 3 | 22.15 | 22.20 | 22.75 | 23.30 | 23.90 | 24.55 | 25.40 | 26.25 |
| Group 4 | 17.65 | 17.70 | 18.25 | 18.80 | 19.40 | 20.05 | 20.90 | 21.75 |
| Group 5 | 20.75 | 20.80 | 21.35 | 21.90 | 22.50 | 23.15 | 24.00 | 24.85 |
| Group 6 | 23.65 | 23.70 | 24.25 | 24.80 | 25.40 | 26.05 | 26.90 | 27.75 |
|  |  |  |  |  |  |  |  |  |
| Health Welfare | 2.50 | 2.50 | 2.50 | 2.50 | 2.50 | 2.50 | 2.50 | 2.50 |
| Pension | 2.35 | 2.35 | 2.35 | 2.35 | 2.35 | 2.35 | 2.35 | 2.35 |
| Annuity | 3.15 | 3.70 | 3.70 | 3.70 | 3.70 | 3.70 | 3.70 | 3.70 |
| NELL-MCT | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
| Unified Trust | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| Training | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 |
| Legal | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 |
| Health & Safety | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
|  |  |  |  |  |  |  |  |  |
| Total Fringes | 9.20 | 9.75 | 9.75 | 9.75 | 9.75 | 9.75 | 9.75 | 9.75 |
| *DUES & LPL | (-.80) | (-.85) | (-.85) | (-.85) | (-.85) | (-.85) | (-.85) | (-.85) |

| Group 1 | Adzeman, Wrecking Laborer |
|---|---|
| Group 2 | Burners, Jackhammers |
| Group 3 | Small Backhoes, Loaders on Tracks, Bobcat Type Loaders, and Hydraulic "Brock" Type Hammer Operators, Concrete Cutting Saws, Journeyman, Concrete Sawyer |
| Group 4 | Yardman Laborer (*Salvage Yard Only*) |
| Group 5 | Yardman, Burners, Sawyers |
| Group 6 | Asbestos, Toxic, Hazardous Waste, and Lead Paint |

### *Dues and LPL are deducted from wages*

*THE COUNCIL RESERVES THE RIGHT TO ALLOCATE THESE INCREASES IN ITS DISCRETION AMONG WAGES, FRINGE BENEFITS AND DUES DEDUCTION.

## <u>SETTLEMENT AGREEMENT</u>

ACT Abatement Co., Inc. ("ACT"), the Massachusetts Laborers' Benefit Funds ("Funds") and Massachusetts Laborers' District Council ("Union") state as follows:

WHEREAS, ACT is signatory to a Collective Bargaining Agreement ("Agreement") with the Massachusetts Laborers' District Council which requires it to pay fringe benefit contributions for every hour worked by its covered employees and to deduct and remit dues; and

WHEREAS, the Funds audited ACT and determined that it owes the Funds and Union $294,638.17 in contributions and dues for work performed between April, 2003 and May 21, 2004; and

WHEREAS, the Union had decided to exercise its contractual right to withhold labor and the Funds had decided to file suit as a result of this delinquency; and

WHEREAS, ACT subsequently made a payment in the amount of $25,000.00 attributable to the Kennedy School job, which payment has decreased its fringe benefit liability through May 21, 2004 to $269,638.17; and

WHEREAS, the parties wish to resolve this matter;

Now, therefore, it is agreed that:

1.   ACT will enter into joint check agreements with each general contractor for which it is currently performing work, pursuant to which the general contractor will pay the fringe benefit contributions due for May, 2004 and for all future months, until the Funds release ACT from this payment arrangement. ACT acknowledges that the May, 2004 payment only covers contributions owed through May 21, 2004, the audited period, and that contributions owed for the week ending May 28, 2004 will be included with the June, 2004 payments.

2.   ACT will provide the general contractors and Funds with copies of job reports to ensure that the general contractors and employees receive proper credit for these payments.

3.   ACT will pay the Funds the $238,277.65 balance due for work performed through April 30, 2004, in weekly minimum installments of $12,000.00, with additional balloon payments of $35,000.00 every fourth week, as follows:

| W/E | AMOUNT |
|:---:|:---:|
| 6/18/04 | $12,000.00 |
| 6/25/04 | $12,000.00 |
| 7/2/04 | $12,000.00 |
| 7/9/04 | $47,000.00 |
| 7/16/04 | $12,000.00 |
| 7/23/04 | $12,000.00 |
| 7/30/04 | $12,000.00 |
| 8/6/04 | $47,000.00 |
| 8/13/04 | $12,000.00 |
| 8/20/04 | $12,000.00 |
| 8/27/04 | $12,000.00 |
| 9/3/04 | $36,277.65 plus interest |

*plus interest*

This payment plan will be modified, starting with the last payments first, if payments are made by third parties in accordance with separate payment arrangements made between ACT and the Funds and/or by accelerated payments from ACT.

4. In consideration for ACT's compliance with these arrangements, the Massachusetts Laborers Benefit Funds will refrain from filing suit against ACT and the Massachusetts Laborers District Council will refrain from withholding labor.

ACT Abatement Corp.                    Massachusetts Laborers' Benefit Funds

Date: 6.27.04                          Date: June 23, 2004

Massachusetts Laborers' District Council

Date: 6-22-04



### WORLDWIDE PCE LLC

*"Meeting the Challenge of Corporate Change"*

23 March 2005

VIA FACSIMILE 617-742-2187

Ann R Sills, Esquire
Segal, Roitman & Coleman
11 Beacon Street
Boston, Massachusetts  02108

Re:    **A.C.T. Abatement Corporation and the Massachusetts Laborers'
Benefit Funds**

Dear Ann:

In connection with your impending meeting with representatives of the Massachusetts Laborers' Benefit Funds (the "Funds") to report the them, among other matters, the status of arrearages owed by A.C.T. Abatement Corporation ("A.C.T.") to the Funds, I wanted to summarize where I believe you and I are in our discussions relative to my proposals for addressing these arrearages as well as a recent, new issue that you brought to my attention relative to an apparent variance between the results of the Funds' audit of A.C.T.'s payroll records and matters reported on A.C.T.'s certified payroll records filed with various prime contractors.  Let me first address the status prior to this new issue.

First let me say that had A.C.T.'s largest prime contractors paid it even half of the money it has been owed for upwards of a year, there never would have been any arrearage to begin with.  Between Mass Development, DCAM, Suffolk Construction and Peabody Construction, A.C.T. is owed over 1.5 million dollars.  In spite of this severe hardship, A.C.T. has been able to survive and bring down the arrearage by well over 50% and now is in a position to work with the Funds and you to retire the balance in its entirety in what we hope will be relative short order.  Indeed, my firm's return to A.C.T. to complete the reorganization process that we had begun so successfully was conditioned, in part, on our having authority to work openly and cooperatively with the Funds so as to minimize to the greatest extent practicable any

*Headquarter office: 1170 Gulf Boulevard, Suite 102, Clearwater, Florida 33767 USA • tele/fax: 727.517.3200
Northeast office: Fifty One Washington Square North, Salem, Massachusetts 01970 USA • tele/fax: 978.594.5310
website: www.wwpce.com*

disruption to the payment of benefits to the Funds' members who have been a large part of A.C.T.'s success in prior years and who will be responsible for a good part of its success in the future. Thus, by way of example, when I resumed my engagement last week and called to speak with you on behalf of A.C.T., the first thing I did was to discharge our counsel who was representing A.C.T. in the lawsuit that you recently brought involving amounts owed on the Newton South job, and told you that as that sum was unquestionably owed, we would not waste either your time or the Funds' money on efforts to collect those amounts. Rather we committed to work cooperatively with you to do all we could to see that those amounts were paid over to the Fund as soon and as economically as feasible.

The current status on cases, subject to this new issue, is, as I understand it, as follows:

1. Pursuant to earlier agreements, joint checks have been authorized with our consent, and we are current on the John Quincy Adams Courthouse, Newton South, Middlesex Jail, Kennedy Middle School, and Suffolk County High-Rise jobs, except for approximately (a) $53,000 on the Newton South Job which has been paid over to Peabody for delivery to you, which they acknowledge as having been received but are unlawfully withholding with no defense, and which is currently the subject of your recent lawsuit and (b) $24,284 owed on the Suffolk County High-Rise project which NER has acknowledged that they have and will pay over to you once they determined that they have no offsets.

2. You have recently filed new bond claims against our bonds on the Mystic and D.F. Burns projects in the amount of approximately $12,000 and 33,474.38, respectively and, subject to my assuring myself that those amounts are correct (and I do believe that they are), we will not contest those claims.

3. Similarly, you have recently made claims for direct payment on the University of Massachusetts/Goesman Laboratory ($6,311.25), Moreville House ($13,896.30) and Springfield Civic Center ($5,786.00) projects and, again subject to reasonable verification, we have agreed to cooperate with you fully in your receiving such payments.

While the foregoing accounts for the vast majority of existing arrearages as of the most recent audit period, we have also offered to provide additional security and payments to the Funds. Specifically, Peabody Construction owes us an uncontested amount of over $300,000 on the Newton South job. A.C.T. has retained counsel to bring a lawsuit and file bond claims in connection with that debt, which filings have

Inn R Sills, Esquire
3 March 2005
Page 3

now been undertaken.   Following your suggestion, our counsel has contacted Travelers' (the bond company) counsel Laurie Carson and we hope that inasmuch as she is aware of the problem, has started making payments on this job, and likely will wish to avoid claims for unfair claim settlement practices, we are hopeful that we might resolve this matter relatively quickly.   In any case, I have instructed counsel to be vicious in his prosecution of this case, and we are willing to give the fund a lien on all proceeds of that litigation to secure any and all amounts due to the Funds (and not just on the Newton South job itself).  We would offer this as a sign of good faith, and not in exchange for asking that the Funds waive any substantive rights.

Within the past few days you also raised an issue relative to a variance between the payroll records audited by the Funds and amounts reflects on some of our certified payroll reports.   You gave me the names of four people appearing on the certified payroll records on one particular job that did not appear in the audit.  I looked into the matter this morning and even had you speak with our bookkeeper, Pat Kennedy about the matter.   It turned out that one of these workers, Bay Leonidas, was a supervisor who was being paid on an hourly basis.   The other three were in fact reported but on a separate form as they were employees with respect to which A.C.T. was then entitled to a credit under the Unified Trust program.  While of course you should feel at liberty to double check as many other jobs as you see fit, and while I do recognize that you may wish to investigate whether A.C.T. is still entitled to any Unified Trust credits, I do hope that, for the moment at least, this allays any fears that you might have had regarding underreporting on our part.

While I recognize that nothing short of immediate payment of all amounts owed to the Funds should make them happy, I hope that these efforts go a long ways towards demonstrating that we are doing all that we can and that we are proceeding in good faith with them.   Of course we would be pleased to listen to whatever additional thoughts you or they might have.

Yours very truly,

Richard L. Wise,
Senior Director and General Counsel

*Inn R Sills, Esquire*
*23 March 2005*
*Page 4*

cc:    Eric B Jeter, Chief Executive Officer
       John J Whyte, Acting President

LABORER'S UNION
A.C.T. ABATEMENT — PROPOSAL FOR PAYMENT
OCTOBER 25, 2005

## PART I

| | |
|---|---|
| SEPTEMBER 2005 — PAY ON 10/26/05 | $19,473 |
| OCTOBER 2005 — PAY ON 12/5/05 | 20,000 |
| NOVEMBER 2005 — PAY ON 12/3/05 | 20,000 |
| DECEMBER 2005 + ALL FUTURE MONTHS PAID ON TIME | |
| TOTAL PAID 10/26/05 – 12/3/05 | $59,473 |

## PART II

| | |
|---|---|
| AUDITED PERIOD JUNE 2004 – AUG 2005 | $248,193 |
| LESS: | |
| NEWTON SOUTH CONTRACT + CO's $169,000 | |
| MIDDLESEX JAIL 1,260 | |
| CROSBY/FOXBORO 27,000 | |
| TOTAL A/R ASSIGNMENT | 197,260 |
| NET DUE | 79,933 |
| LESS: OUT-OF-STATE | 70,000 |
| DIFFERENCE, IF ANY, PAY ON 12/3/05 | $933 |

## PART III

,IF ANY,
ANY AMOUNTS ARISING OUT OF ITEMS TO BE
RECONCILED WILL BE PAID IN 10 EQUAL
INSTALLMENTS STARTING IN JANUARY 2006.

OPEN ITEMS:
1 RECONCILE JT. CHECKS + AMT. DUE PRIOR TO JUNE 2004
2 RECONCILE AUG. 2005 — $29,000 V.S. $23,000
3 RECONCILE OUT-OF-STATE AMOUNTS
4 AGREE ON INTEREST RATE AND AMOUNT DUE.

A.C.T. ABATEMENT
LABORER'S UNION
SETTLEMENT PROPOSAL
NOVEMBER 4, 2005

Background:
A.C.T. Abatement accumulated a benefits payable due to the refusal to pay for fair work done by A.C.T. at the JQA Courthouse and the Saltonstall Building. The total amount due from these projects was $1,160,000 of which only $465,000 was ever received and this was further reduced by legal and other costs. This shortfall of cash in turn caused the loss of other business and of other collections due to "copy-cat" refusals to pay valid receivables. As a result of the loss of these collections vendor payments were delayed.

The total write-off on these two jobs alone totaled $695,000 or 60% of the amount due. Had these billings for fair services rendered been paid the Union benefits would also have been paid. In spite of this severe setback in the operations of A.C.T., A.C.T. has not run from its overall obligations as so many others have in the past.

What A.C.T. has asked for from its vendors and agencies is patience in payment and a sharing of the tremendous burden caused by the loss of $695,000. Again, A.C.T. is fighting hard to continue in operations for the benefit of itself and all its stakeholders. A.C.T. has been a loyal supporter of the Laborer's Union for over 12 years, during which time it has paid between $7,000,000 and $10,000,000 in Union benefits. A.C.T. continues to this day to be loyal to its partnership with the laborer's Union.

The amounts owed to the Union by A.C.T. are summarized as follows:

| | |
|---|---:|
| Total benefits calculation of amounts due to the Laborer's Union from January 2003 through August 2005 before payments and adjustments | $ 1,248,488.59 |
| Less direct payments made by A.C.T. | (668,748.89) |
| Less direct payments made through joint checks | (404,666.15) |
| Less out-of state jobs | (114,124.22) |
| Net amount remaining to be paid | $ 175,033.55 |

The following outlines A.C.T.'s proposal for the repayment of the amounts owed the Laborer's Union:

Part I – Payment of current benefits

| | |
|---|---:|
| Payment November 3, 2005 of the amount due for September 2005 | $ 19,473.10 |
| Payment for the amount due for October 2005 by December 5, approximately | 20,000.00 |
| Payment for the amount due for November 2005 by December 31, approximately | 20,000.00 |
| Total payments from today through December 31, 2005, approximately | $ 83,370.50 |

Note: December 2005 and all months thereafter will be paid when due.

Part II – Payment by assignment of accounts receivable

| | |
|---|---:|
| Payment by assignment of Newton South Contract | $105,000.00 |
| Payment by assignment of Crosby/Foxboro | 27,500.00 |
| Remaining payment of balance – see Part III below | 42,533.55 |
| Total assignment and payments | $ 175,033.55 |

Part III – Payment of Remaining Balance and Interest
A.C.T. proposes that the remainder of the balance due be paid by: 1) assigning one other account receivable of approximately $11,000 (Peabody South Boston Harbor Academy), and 2) by 6 equal payments of $5,255 commencing in January 2006. Further, after agreement on the amount of interest to be paid by A.C.T. it will be added prorate to the six payments in 2006.

Note: In order to finance its operations and make the payments to the Union and others A.C.T. entered into an agreement with a factoring lender. Resultantly, A.C.T. has sold and will continue to sell its accounts receivable and is unable to offer these as collateral or pledges of amounts due.

**536 Granite Street**
**Braintree, MA 02184**
**(781) 848-2680**
**Fax: (781) 380-1570**



# Fax / Transmittal

| To: | Ann R. Sills, Esquire | Fax #: | 617-742-2187 |
|-----|----------------------|--------|--------------|
|     | Segal Roitman & Coleman |      |              |
| From: | Ted Fish | Pages: | 3 |
|       |          | Date:  | October 7, 2005 |
| Phone: | | | |
| Re: | *ACT Abatement – Release of Levy/Release of Property from Levy* | CC: | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

Ann,

Good news…we are in receipt of the attached Release of Levy/Release of Property from Levy from the IRS.  Now all we have to do is get Eric to provide more back up for his pending change orders on Newton.  Anything you can do regarding the aforementioned would be helpful.

Please let me know if you have any questions regarding the above.  Thanks.

Ted

EAFJ*mab

C:\DOCUMENTS AND SETTINGS\MBELYEA\MY DOCUMENTS\LETTERS\TED FISH\FAXES\10-7-05 SILLS.DOC

**536 Granite Street**
**Braintree, MA 02184**
**(781) 848-2680**
**Fax: (781) 380-1570**



# Fax / Transmittal

| To: | Anne Sills, Segal, Roitman & Coleman | Fax #: | 617-742-2187 |
|---|---|---|---|
| From: | Ted Fish | Pages: | 3 |
| Phone: | | Date: | October 13, 2005 |
| Re: | *Follow-up to telephone conversation* | CC: | |

☐ Urgent     ☐ For Review     ☐ Please Comment     ☐ Please Reply     ☐ Please Recycle

Anne,

The following is my understanding of how we are proceeding on the referenced matters:

1. Attached is a listing of outstanding change orders that ACT has on Newton South, which if addressed could result in a significant payment due to ACT. Please let me know if you have any questions regarding these items.

2. With respect to MAC on Newton South, you were going to withdraw this claim.

3. With regard to ODF on Brunswick with the Laborer's, you were going to talk to Laurie Larson.

4. I am going to forward the release you forwarded to me in connection with the Local 4/ODF settlement on Academy Homes of $15K.

EAFJ*mab
Attachment

C:\DOCUMENTS AND SETTINGS\MBOLYEA\MY DOCUMENTS\LETTERS\TED FISH\FAXES\10-13-05 SILLS.DOC

# *Peabody Construction Co., Inc.*

**To:**  **Drummey Rosane Anderson, Inc.**         **Date:  December 20, 2005**
**Attn.:  Mr. Stefan Chaires, Project Manager**
**VIA FACSIMILE: 617-969-9054**

**From:  Joe Yee, Vice-President**

**Re:**  **Newton South High School**
      **COR #286r**
      **CCD #75 Building E, D-connector**
      **VAT and Mastic Removal**

We submit herewith the above Change Order Request for your approval.  Peabody has corrected subcontractor mark-up, the issue that caused rejection previously.  Revised amount of this COR is $20107.00 (ACT portion is $18,866.11).  We await your review.  Approval of this change will result in funds going to the Laborer's Union Benefit Fund.  ACT Abatement is no longer a viable subcontractor.

**cc:**  **City of Newton / O. Young, Esq.**     **617-796-1254**
     **Ann Sills, Esq.**                  **617-742-2187**
     **EAFj**

**file:**  **COR #278r-proposal-1220**

**TEL: 781-848-2680**       **FAX:  781-380-1570**       **DIRECT TEL:  781-380-1515**
           **E-Mail: jyee@peabodyconstruction.com**

Case 1:05-cv-10147-RCL   Document 20-7   Filed 02/02/2007   Page 4 of 5

# *Peabody Construction Co., Inc.*

**To:**  **Ann Sills, Esq**                          **Date:  December 21, 2005**
        **Agent to Mass Laborer's Benefit Fund**
VIA FACSIMILE: 617-742-2187

**From: Joe Yee**

**Re:**  **Newton South High School**
       **Summary of Final COR Submittals to City and Architect for Approval**
       **COR monies that become Funds to Mass Laborers / ACT Abatement**

With reference to the aforementioned, after approval of COR and payment by the
City of Newton, Payment will be made to Mass Laborers and ACT Abatement.  The
Final list of COR's that we have sent as packages (yesterday and today) to
Architect and the City, and to your office are as follows:

| Change Request | Previous ACT Amount Amount | | Corrected/Submitted Amount |
|---|---|---|---|
| COR 214r, CCD #67 | 15,283.00 | | 11,039.49 |
| COR 248r, CCD #75A,B,C | 4,873.28 | (adj. Combined) | 12,427.00 |
| | 9,248.30 | | |
| COR 277r, CCD #75 C | 17,842.34 | | 15,701.26 |
| COR 278r, CCD #75 C, D | 51,734.66 | | 43,727.94 |
| COR 286r, CCD #75 E, D | 21,438.76 | | 18,866.11 |

                                **Total**    **$101,761.80**
                                **(awaiting approval, final amount**
                                                **could be less)**

**cc:**    **EAFj**

**file:**   **ACT-MassLaborer-COR-1221**

**TEL: 781-848-2680        FAX: 781-380-1570        DIRECT TEL: 781-380-1515**
                    **E-Mail: jyee@peabodyconstruction.com**

✳✳✳ TRANSMISSION REPORT ✳✳✳

DEC-21-05 10:53  ID:6177422187              SEGAL/ROITMAN+COLEMAN

JOB NUMBER                               124

INFORMATION CODE                  OK

TELEPHONE NUMBER        16172446363

NAME(ID NUMBER)         617 244 6363

START TIME              DEC-21-05 10:52

PAGES TRANSMITTED       002     TRANSMISSION MODE          EMMR

RESOLUTION              STD     REDIALING TIMES            00

SECURITY                OFF     MAILBOX                    OFF

MACHINE ENGAGED         00'52

THIS TRANSMISSION IS COMPLETED.

LAST SUCCESSFUL PAGE    002

**SEGAL, ROITMAN & COLEMAN**
COUNSELORS AT LAW
11 BEACON STREET, SUITE 500
BOSTON, MA 02108
TEL: (617) 742-0208
FAX: (617) 742-2187

## Fax Cover Sheet

Date:    December 21, 2005

To:      Ron Dunbar, Esq.              Fax:     (617) 244-6363

From:    Anne Sills                    Phone:   617-742-0208
                                       Fax:     617-742-2187

Number of pages including cover sheet: 2

Re:

Message:

FYI

If you do not receive a portion of this fax, please notify Wanda at the telephone number below.
The information contained in this transmittal is privileged and confidential. If the reader of this transmittal
is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient,
you are hereby notified that any dissemination, distribution, or copying of this communication is strictly
prohibited. If you have received this communication in error, please notify us immediately by telephone,
and return the original to us.
E-MAIL: asills@segalroitman.com

# DUNBAR &
# RODMAN LLP

ONE GATEWAY CENTER • SUITE 405
NEWTON, MASSACHUSETTS 02458
TEL: (617) 244-3550
FAX: (617) 244-6363
WEB: WWW.DUNBARRODMAN.COM

**BY HAND**

January 18, 2006

Anne R. Sills, Esquire
Segal Roitman & Coleman
11 Beacon Street
Boston, MA 02018

Re:    McNally, et al. v. ACT Abatement Corp., et al.
       United States District Court Civil Action No. 05-101147-RCL

Dear Anne:

Below is ACT Abatement Corp.'s ("ACT") proposal with respect to paying the outstanding amounts owed to the Massachusetts Laborers' Health and Welfare Fund (the "Union").

According to the Union's audit of ACT's books and records at the end of last year, ACT owes the Union $255,865. Since the audit, the Union has received payments from Act of $40,685 as a result of joint check arrangements on three (3) of ACT's jobs. Thus, the adjusted amount owed to the Union is $215,180.[1]

ACT proposes to pay the $186,902.25 as follows:

1.  Direct payment of, at least, $105,000 to the Union from Peabody Construction with respect to the Newton South High School project;[2]

2.  The remaining $81,902.25 will be paid according to the following schedule: $3,809.30 per month (beginning in February) for eleven months with an additional lump sum payment of $15,000 in July of 2006 and additional lump sum payment of $25,000 in December of 2006 (the additional lump sum

---

[1] Included within the $215,180 is $28,277.75 attributable to work performed in Manchester, New Hampshire. Manchester, New Hampshire, however, is not included within the scope of the collective bargaining agreement. Salem, New Hampshire is the only New Hampshire location included. See Appendix A to the collective bargaining agreement (Wage Rates and Classifications). Consequently, ACT disputes that it owes the $28,277.75 associated with the Manchester, New Hampshire work. Removing the $28,277.75 from the amount owed, leaves a balance of $186,902.25. ACT's payment plan sets forth ACT's proposal to pay the $186,902.25 only.
[2] ACT strongly believes that Peabody Construction owes ACT $190,385.80. To the extent that ACT receives any funds over $105,000 (possibly an additional $85,000), ACT will pay those funds to the Union immediately upon receipt if any past due amounts are owed to the Union at that time.

# DUNBAR & RODMAN LLP

Anne R. Sills, Esquire
Segal Roitman & Coleman
January 18, 2006
Page 2 of 2

> payments will be made in addition to the regular $3,809.30 monthly payment due in July and December); and

3. ACT will also pay interest at the end of the payment plan once a mutually agreeable interest amount is determined between the Union and ACT.

ACT will remain current with respect to its regular monthly obligations to the Union. It should be noted that, as of today, ACT is current.

ACT's goal is to pay the Union as quickly as possible taking into consideration ACT's historical cash flow over the course of the year. If ACT receives additional funds, that are not contemplated today, that are sufficient to increase the payments to the Union (above the payments outlined herein), ACT will make additional payments to the Union with the goal of paying the Union's entire outstanding balance within six (6) months.

As you know, ACT has reduced substantially the amounts owed to the Union over the last year and remains committed to becoming entirely current no later than the end of this year.

OK 1/18/06 10⁴⁷

If you have any questions, please call me.

Sincerely,

Ronald W. Dunbar, Jr.
Cc: Eric Jeter

# SEGAL, ROITMAN & COLEMAN

DONALD J. SIEGEL
PAUL F. KELLY
IRA SILLS
MARY THOMAS SULLIVAN*
SHELLEY B. KROLL
BURTON E. ROSENTHAL
ANNE R. SILLS
KATHRYN S. SHEA
INDIRA TALWANI**
ELIZABETH ARIENTI SLOANE
MICHAEL J. DOHENY
STEPHANIE R. PRATT
GREGORY A. GEIMAN
RACHEL E. ROSENBLOOM

* Also Admitted to the
New Hampshire Bar

**Also Admitted to
the California Bar

COUNSELLORS AT LAW
11 BEACON STREET
SUITE 500
BOSTON, MASSACHUSETTS 02108

ROBERT M. SEGAL (1915-1999)

OF COUNSEL
RICHARD W. COLEMAN
HAROLD B. ROITMAN
JOANNE F. GOLDSTEIN
JOSEPH P. McKENNA, JR.
PAUL S. HOROVITZ

January 24, 2006

**BY FAX & MAIL**
Ronald Dunbar, Esquire
Dunbar & Rodman, LLP
One Gateway Center
Newton, MA 02458

Dear Ron:

As I indicated in my phone message, the Trustees have agreed to accept ACT's proposal. However, this is contingent on ACT remaining current, pursuing collection of the Peabody monies and entering into a Stipulated Judgment, to be held in abeyance as long as ACT complies with its obligations.

Unfortunately, ACT's check for $20,000.00, paying the November, 2005 contributions, did not clear. Eric warned me and stated that it should clear today. It is the Funds' rule, however, that a bounced check must be replaced with a bank check and payment of the fee which, in this case was $25.00. In addition, ACT is now delinquent for December, 2005. Please be sure that ACT immediately complies with its obligations to 1) replace the November check with a bank check; 2) pay the $25.00 fee; and 3) pay the December, 2005 contributions.

With respect to the Peabody monies, I have been requested to keep the Funds' Administrator apprised of the status of those collection efforts, both with the City of Newton and with the bonding company. Please let me know where these matters stand.

Finally, we must proceed with the drafting of the stipulated judgment. The Trustees took the position that the New Hampshire monies are owed and must be included in the Judgment, together with interest. They would argue in an arbitration proceeding that there is an established past practice requiring these payments.

Please call me today to discuss these matters. Summary Judgment pleadings are due on January 31, 2006. If I am forced to file for Summary Judgment, in lieu of a Stipulated Judgment, then the Funds will seek payment of attorney's fees.

Very truly yours,

Anne R. Sills

ARS/ars&ts
6306 03-294/dunbar4.doc

⚹⚹⚹  T R A N S M I S S I O N   R E P O R T  ⚹⚹⚹

JAN-24-06 10:14   ID:6177422187          SEGAL/ROITMAN+COLEMAN

**JOB  NUMBER**                               **508**

**INFORMATION  CODE**                  **OK**

TELEPHONE  NUMBER          16172446363

NAME(ID NUMBER)            617 244 6363

START  TIME                JAN-24-06 10:11

PAGES TRANSMITTED     003     TRANSMISSION MODE        EMMR

RESOLUTION            STD     REDIALING TIMES          00

SECURITY              OFF     MAILBOX                  OFF

MACHINE  ENGAGED      02'19

THIS TRANSMISSION IS COMPLETED.

LAST SUCCESSFUL PAGE      003

SEGAL, ROITMAN & COLEMAN
COUNSELLORS AT LAW
11 BEACON STREET
SUITE 500
BOSTON, MASSACHUSETTS 02108

ROBERT M. SEGAL (1915-1999)

DONALD J. SIEGEL
PAUL F. KELLY
IRA SILLS
MARY THOMAS SULLIVAN*
SHELLEY B. KROLL
BURTON E. ROSENTHAL
ANNE R. SILLS
KATHRYN S. SHEA
INDIRA TALWANI**
ELISABETH ARKINDY SLOANE
MICHAEL J. DOHENY
STEPHANIE PRATT-MITRA
GREGORY A. GEIMAN
RACHEL E. ROSENBLOOM

* Also Admitted to the
New Hampshire Bar

**Also Admitted to
the California Bar

OF COUNSEL
RICHARD W. COLEMAN
HAROLD B. ROITMAN
JOANNE F. GOLDSTEIN
JOSEPH P. McKENNA, JR.
PAUL S. HOROVITZ

**FAX TRANSMITTAL SHEET**

DATE: _____1/24/06_____          TIME: _____10:15_____  (AM/PM)

TO: _____Ron Dunbar_____         FAX#: _(617) 244-6363_

                                 PHONE #: _____

FROM: _____Anne Sills_____

Number of pages (including cover sheet): ___3___

MESSAGE:

_____

_____

_____

_____

_____

*If you do not receive this fax, please notify ___Thais___ at the above telephone number.*

The information contained in this transmittal is privileged and confidential. If the reader of this transmittal is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original to us.

TEL: (617) 742-0208 • FAX: (617) 742-2187

# LETTER OF TRANSMITTAL

**(A C T) ABATEMENT**
C O R P O R A T I O N

18 Broadway
Lawrence, MA 01840-1010
Tel: 978-794-9530
Fax: 978-794-3563

| DATE 1-4-06 | JOB NO. |
|---|---|
| ATTENTION | |
| RE: | |

To: Ann Sills, Esq
Segal, Roitman + Coleman
11 Beacon St. Suite 500
Boston, Mass    02108

WE ARE SENDING YOU  ☑ Attached  ☐ Under separate cover via _____ the following items:

☐ Shop drawings   ☐ Prints   ☐ Plans   ☐ Samples   ☐ Specifications
☐ Copy of letter   ☑ Change orders   ☐ _____

| COPIES | DATE | NO. | DESCRIPTION |
|---|---|---|---|
| | | | Received from Peabody C.C. |
| | | | for your information |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**THESE ARE TRANSMITTED as checked below:**

☐ For approval             ☐ Approval as submitted      ☐ Resubmit _____ copies for approval
☐ For your use             ☐ Approval as noted          ☐ Submit _____ copies for distribution
☐ As requested             ☐ Returned for corrections   ☐ Return _____ corrected prints
☐ For review and comment   ☐ _____
☐ FOR BIDS DUE _____      ☐ PRINTS RETURNED AFTER LOAN TO US

REMARKS __ I am in the process of reconciling
the attached with the other change
orders still unsubmitted /a-d/ or still unpaid
that are not in this package.

COPY TO _____

SIGNED: _____

*If enclosures are not as noted, kindly notify us at once.*

# SEGAL, ROITMAN & COLEMAN

DONALD J. SIEGEL
PAUL F. KELLY
IRA SILLS
MARY THOMAS SULLIVAN*
SHELLEY B. KROLL
BURTON E. ROSENTHAL
ANNE R. SILLS
KATHRYN S. SHEA
INDIRA TALWANI**
ELIZABETH ARIENTI SLOANE
MICHAEL J. DOHENY
STEPHANIE R. PRATT
GREGORY A. GEIMAN
RACHEL E. ROSENBLOOM

COUNSELLORS AT LAW
11 BEACON STREET
SUITE 500
BOSTON, MASSACHUSETTS 02108

ROBERT M. SEGAL (1915-1999)

OF COUNSEL
RICHARD W. COLEMAN
HAROLD B. ROITMAN
JOANNE F. GOLDSTEIN
JOSEPH P. MCKENNA, JR.
PAUL S. HOROVITZ

\* Also Admitted to the
  New Hampshire Bar

\*\*Also Admitted to
  the California Bar

January 9, 2006

Mr. Joseph Yee
Peabody Construction Co.
536 Granite Street
Braintree, MA  02184

Re:    Massachusetts Laborers Benefit Funds and ACT Abatement

Dear Joe:

    I received the enclosed from ACT in support of its claim that it's owed additional monies. Could you let me know Peabody's position on these charges?  Thanks.

Very truly yours,

Anne R. Sills

Encl.
cc:    Eric Jeter
ARS/ars&akh
6306-03-294/yee.doc

TEL: (617) 742-0208 • FAX: (617) 742-2187

## *Peabody Construction Co., Inc.*

**To:**  Drummey Rosane Anderson, Inc.                    **Date:  January 10, 2005**
**Attn.:**  Mr. Stefan Chaires, Project Manager
**VIA FACSIMILE: 617-969-9054**

**From: Joe Yee, Vice-President**

**Re:**  Newton South High School
          COR #277r2  (corrected for labor hours)
          CCD #75 Items A, B, C
          Asbestos on pipe and duct at the Gym

We submit herewith the above Change Order Request for your approval.  Peabody
has corrected subcontractor mark-up and for actual hours noted on field tickets,
the issues that caused rejection previously.  Revised amount of this COR is
$10,251.00 (ACT portion is $9,619.29) We await your review.  Approval of this
change will result in funds going to the Laborer's Union Benefit Fund.  ACT
Abatement is no longer receiving the direct payment.

**cc:**  City of Newton / O. Young, Esq.     617-796-1254
         Ann Sills, Esq.                     617-742-2187
         EAFj

**file:**  COR #277r2-proposal-01-10-06

**TEL: 781-848-2680          FAX: 781-380-1570          DIRECT TEL: 781-380-1515**
**E-Mail: jyee@peabodyconstruction.com**

# SEGAL, ROITMAN & COLEMAN

COUNSELLORS AT LAW
11 BEACON STREET
SUITE 500
BOSTON, MASSACHUSETTS 02108

ROBERT M. SEGAL (1915-1999)

DONALD J. SIEGEL
PAUL F. KELLY
IRA SILLS
MARY THOMAS SULLIVAN*
SHELLEY B. KROLL
BURTON E. ROSENTHAL
ANNE R. SILLS
KATHRYN S. SHEA
INDIRA TALWANI**
ELIZABETH ARIENTI SLOANE
MICHAEL J. DOHENY
STEPHANIE R. PRATT-MITRA
GREGORY A. GEIMAN
RACHEL E. ROSENBLOOM

OF COUNSEL
RICHARD W. COLEMAN
HAROLD B. ROITMAN
JOANNE F. GOLDSTEIN
JOSEPH P. MCKENNA, JR.
PAUL S. HOROVITZ

\* Also Admitted to the
New Hampshire Bar

\*\*Also Admitted to
the California Bar

May 15, 2006

VIA FACSIMILE
Myles C. Beltram, Esquire
Domestico, Lane & Mcnamara, LLP
161 Worcester Road
Framingham, MA  01701

Re:    Massachusetts Laborers' Benefit Funds and ACT Abatement Corp.

Dear Myles:

Enclosed please find a faxed copy of the signed release.  I am awaiting receipt of the original and will forward it once I receive it from the Funds and the check from you in the amount of $46,211.00.  Thanks for your help.

Very truly yours,

Anne R. Sills

Encl.

ARS/ars&ts
6306 03-294/beltram.doc

TEL: (617) 742-0208 • FAX: (617) 742-2187

# DOMESTICO, LANE & McNAMARA, LLP
## COUNSELLORS AT LAW

THE MEADOWS
161 WORCESTER ROAD
FRAMINGHAM, MASSACHUSETTS 01701

TELEPHONE  (508) 626-9000
FACSIMILE  (508) 626-9001

CHARLES J. DOMESTICO
PAUL M. LANE
JOHN J. McNAMARA

CDOMESTICO@DLandM.COM
PLANE@DLandM.COM
JMcNAMARA@DLandM.COM

BRENDAN M. O'ROURKE
ERIC A. HOWARD
MYLES C. BELTRAM
MATTHEW A. FOYTLIN

BOROURKE@DLandM.COM
EHOWARD@DLandM.COM
MBELTRAM@DLandM.COM
MFOYTLIN@DLandM.COM

May 16, 2006

**VIA FACSIMILE and**
**FIRST CLASS MAIL**

**Anne Sills, Esquire**
**Segal, Roitman & Coleman**
**11 Beacon Street, Suite 500**
**Boston  MA   02108**

> Re:  A.C.T. Abatement Corporation vs.
>      Peabody Construction Co., Inc. et al
>      Project:  Newton South High School
>      Norfolk Superior  C.A. 2005-00525

Dear Anne:

Thank you for your letter of May 15, 2006 enclosing the signed copy of the Partial Release.  Please find enclosed the check in the amount of $46,211.00.  Please forward the original Partial Release to our office upon receipt from your client.

Thank you for your continued cooperation in this matter.

Very truly yours,

Myles C. Beltram

Enclosure

cc:  Ronald W. Dunbar, Jr., Esquire (via fax only)
     John J. McNamara, Esquire
     Edward A. Fish, Jr., President (via fax only)
     Robin Wilcox, Bond Claim Representative (via fax only)
     Marilynn Belyea, Paralegal (via fax only)

# SEGAL, ROITMAN & COLEMAN

DONALD J. SIEGEL
PAUL F. KELLY
IRA SILLS
MARY THOMAS SULLIVAN*
SHELLEY B. KROLL
BURTON E. ROSENTHAL
ANNE R. SILLS
KATHRYN S. SHEA
INDIRA TALWANI**
ELIZABETH ARIENTI SLOANE
MICHAEL J. DOHENY
STEPHANIE R. PRATT-MITRA
GREGORY A. GEIMAN
RACHEL E. ROSENBLOOM

———

\* Also Admitted to the
New Hampshire Bar

\*\*Also Admitted to
the California Bar

COUNSELLORS AT LAW
11 BEACON STREET
SUITE 500
BOSTON, MASSACHUSETTS 02108

ROBERT M. SEGAL (1915-1999)

OF COUNSEL
RICHARD W. COLEMAN
HAROLD B. ROITMAN
JOANNE F. GOLDSTEIN
JOSEPH P. McKENNA, JR.
PAUL S. HOROVITZ

May 17, 2006

Myles C. Beltram, Esquire
Domestico, Lane & Mcnamara, LLP
161 Worcester Road
Framingham, MA  01701

Re:    Massachusetts Laborers' Benefit Funds and ACT Abatement Corp.

Dear Myles:

Enclosed please find a copy of the release with Tom Masiello's original signature. Thanks for your help.  Any developments on the remaining payment?

Very truly yours,

Anne R. Sills

Encl.

ARS/ars&ts
6306 03-294/beltram2.doc

MAY-03-2006    16:41     DUNBAR & RODMAN LLP          617 244 6363    P.02/04
MAY-03-2006    15:15     DUNBAR & RODMAN LLP

## PARTIAL RELEASE

In consideration of the payment of $46,211.00, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, A.C.T. Abatement Corp., and its current and former parents, subsidiaries, affiliates, sureties, predecessors, successors, assigns, officers, shareholders, members, partners, directors, representatives, attorneys, agents, servants, employees, insurers and sureties, (collectively "A.C.T."), and the Massachusetts Laborers' Health and Welfare Fund, New England Laborers' Training Trust Fund, Massachusetts Laborers' Pension Fund, Massachusetts Legal Services Fund, and Massachusetts Laborers' Annuity Fund, and their current and former parents, subsidiaries, affiliates, sureties, predecessors, successors, assigns, officers, shareholders, members, partners, directors, representatives, attorneys, agents, servants, employees, insurers and sureties, (collectively the "Mass. Laborers"), hereby partially release and discharge Peabody Construction Co., Inc., and Travelers Casualty and Surety Company of America, and their current and former parents, subsidiaries, affiliates, sureties, predecessors, successors, assigns, officers, shareholders, members, partners, directors, representatives, attorneys, agents, servants, employees, insurers and sureties, (collectively "Peabody" and "Travelers"), from any and all debts, demands, actions, causes of action, suits, contracts, bonds, sums of money, accounts, payments, covenants, controversies, agreements, promises, acts and omissions, damages, liabilities in any and all other claims of every kind, nature and description whatsoever, both at law and in equity, which A.C.T. and/or the Mass. Laborers now have, may have, or ever had against Peabody and Travelers arising out of or in any way connected with the project known as Newton South High School (the "Project"), and payment bond number 103696213, issued by Travelers on behalf of Peabody (the "Bond"), including any and all claims that were asserted and/or which could have been asserted against Peabody and Travelers in the litigation entitled A.C.T. Abatement Corp. v. Peabody Construction Co., Inc. and Travelers Casualty and Surety Company of America, in the Norfolk Superior Court, Civil Action No NOCVCV2005-00525 (the "Norfolk Action"), and against Peabody, as reach and apply defendant, in the litigation entitled Paul J. McNally, Trustee et al. v. A.C.T. Abatement Corp. v. Peabody Construction Co., Inc., in the United States District Court for the District of Massachusetts, Civil Action No. 05-10147RCL (the "Federal Court Action"). Excluded from the operation of this partial release are the amounts stated in Subcontract Change Order No. 9, specifically, $95,679.34.

A.C.T. and the Mass. Laborers warrant that the subject matter and amount of their claims was fully and truthfully presented to Peabody and Travelers, their agents, attorneys or employees, and that A.C.T. and the Mass. Laborers do not know of any additional credits or offsets which, if disclosed by or conceded as correct by A.C.T. and the Mass. Laborers, might tend to reduce the amount of their claim, and further warrant that all of their contractual obligations have been satisfied in full; and

A.C.T. and the Mass. Laborers acknowledge that the payment of the above-noted sums do not constitute an admission of liability, which liability is expressly denied; said payments being made solely for the purpose of disposing of disputed claims; and

As a further inducement for making payment, A.C.T. and the Mass. Laborers hereby agree that all guarantees and warranties required under the terms of their contract pertaining to the work, labor and/or materials furnished in connection with the Project shall remain in full force and effect, in accordance with their terms which, however, shall not be extended or enlarged hereby; and

A.C.T. further warrants and represents, and hereby certifies that, all just and lawful billings, accounts and/or amounts due from A.C.T., with the exception of the Mass. Laborers, and/or its subcontractors or material suppliers for labor, material and/or equipment employed in the performance of its obligations to the Project have been fully paid in accordance with the terms and conditions of the relevant subcontract(s), and that there are no amounts for which A.C.T. would be responsible under such agreement(s), all amounts having been fully paid and other terms of the relevant subcontract(s), material supply contract(s), or purchase order(s) having been fully complied with by A.C.T.; and

A.C.T. and the Mass. Laborers acknowledge that they have read this Agreement and Release, they have had the advice of counsel with respect to this Agreement and Release, and that its execution are their own free act and will.

The undersigned individual hereby represents that he/she is duly authorized to execute this document on behalf of and to bind A.C.T. and the Mass. Laborers, to the terms of this Partial Release.

In witness whereof, the undersigned has executed this
Partial Release:

Dated: May 3, 2006        A.C.T. Abatement Corp.,

_____  Pres
Eric Jeter, President

_____
Witness

Dated: May 12, 2006        MASSACHUSETTS LABORERS' HEALTH
AND WELFARE FUND;
NEW ENGLAND LABORERS'
TRAINING TRUST FUND;
MASSACHUSETTS LABORERS' PENSION FUND;
MASSACHUSETTS LEGAL SERVICES FUND;
MASSACHUSETTS LABORERS' ANNUITY FUND.

_____
Thomas P.V. Masiello, Administrator

_____
Witness

TOTAL P.04
TOTAL P.04

# SEGAL, ROITMAN & COLEMAN

COUNSELLORS AT LAW
11 BEACON STREET
SUITE 500
BOSTON, MASSACHUSETTS 02108

DONALD J. SIEGEL
PAUL F. KELLY
IRA SILLS
MARY THOMAS SULLIVAN*
SHELLEY B. KROLL
BURTON E. ROSENTHAL
ANNE R. SILLS
KATHRYN S. SHEA
INDIRA TALWANI**
ELIZABETH ARIENTI SLOANE
MICHAEL J. DOHENY
STEPHANIE R. PRATT-MITRA
GREGORY A. GEIMAN
RACHEL E. ROSENBLOOM

ROBERT M. SEGAL (1915-1999)

OF COUNSEL
RICHARD W. COLEMAN
HAROLD B. ROITMAN
JOANNE F. GOLDSTEIN
JOSEPH P. McKENNA, JR.
PAUL S. HOROVITZ

* Also Admitted to the
New Hampshire Bar

**Also Admitted to
the California Bar

June 20, 2006

**BY FAX & MAIL**
Ronald Dunbar, Esquire
Dunbar & Rodman, LLP
One Gateway Center
Newton, MA  02458

Re:    ACT Abatement

Dear Ron:

There are several matters I need to address with you regarding ACT prior to the Massachusetts Laborers' Benefit Funds' Delinquency Committee meeting scheduled for July 11, 2006 at which ACT will once again be a major topic of conversation.  They are as follows:

1.    I wrote to you on June 12 regarding ACT's efforts to reduce its contribution obligation for its employee, Jorge Urena, Social Security No. 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, based on Robbie's claim that he was working as a supervisor between November, 2003 and May, 2005.  As I still don't have his address and therefore cannot send him a release, the Funds will not reduce their claim by $11,091.59, as requested by ACT.

2.    The Funds still don't have April's contributions.  Eric left me a message that Suffolk was paying but the Funds have yet to receive the payment and ACT is, of course, delinquent in violation of its settlement agreement.  May contributions are due today, so the company is now two months delinquent.

3.    It has made not made the $3,809.30 monthly payments for April and May and in July it is supposed to make an additional $15,000 lump sum payment which the Funds are expecting.

TEL: (617) 742-0208 • FAX: (617) 742-2187

4.    I've heard nothing more about the Peabody/Newton South payment.  Where does that stand?

Please call me today to discuss these matters.

Very truly yours,

Anne R. Sills

ARS/ars&ts
6306 03-294/dunbar6.doc

## ✗✗✗ TRANSMISSION REPORT ✗✗✗

JUN-20-06  12:05   ID:6177422187          SEGAL/ROITMAN+COLEMAN

### JOB NUMBER                                    150

### INFORMATION CODE                    OK

TELEPHONE NUMBER        16172446363

NAME(ID NUMBER)         617 244 6363

START TIME              JUN-20-06 12:04

PAGES TRANSMITTED       003      TRANSMISSION MODE      EMMR

RESOLUTION              STD      REDIALING TIMES        00

SECURITY                OFF      MAILBOX                OFF

MACHINE ENGAGED         01'06

THIS TRANSMISSION IS COMPLETED.

LAST SUCCESSFUL PAGE    003

## SEGAL, ROITMAN & COLEMAN
### COUNSELLORS AT LAW
11 BEACON STREET
SUITE 500
BOSTON, MASSACHUSETTS 02108

DONALD J. SIEGEL
PAUL F. KELLY
IRA SILLS
MARY THOMAS SULLIVAN*
SHELLEY B. KROLL
BURTON E. ROSENTHAL
ANNE R. SILLS
KATHRYN S. SHEA
INDIRA TALWANI**
ELIZABETH ARIENTI SLOANE
MICHAEL J. DOHENY
STEPHANIE R. PRATT-MITRA
GREGORY A. GEIMAN
RACHEL E. ROSENBLOOM

ROBERT M. SEGAL (1915-1994)

OF COUNSEL
RICHARD W. COLEMAN
HAROLD B. ROITMAN
JOANNE F. GOLDSTEIN
JOSEPH P. McKENNA, JR.
PAUL S. HOROVITZ

* Also Admitted to the
New Hampshire Bar
** Also Admitted to
the California Bar

### FAX TRANSMITTAL SHEET

DATE: _6/20/06_                    TIME: _12:03_          AM/PM

TO: _Ron Duncan_                   FAX#: _(617) 244-6362_

_____           PHONE #: _____

FROM: _Anne Sills_

Number of pages (including cover sheet): _3_

MESSAGE:
_____
_____
_____
_____
_____
_____

*If you do not receive this fax, please notify* _Tracy_ *at the above telephone number.*

The information contained in this transmittal is privileged and confidential. If the reader of this transmittal is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original to us.

TEL: (617) 742-0208 • FAX: (617) 742-2187



March 29, 2006

Anne Sills, Esq.
Segal, Roitman & Coleman
11 Beacon Street
Boston, MA 02108

Subject: Payments to MLBF

Dear Anne,

According to our records and pursuant to the documents previously sent to you our union benefit payments should now be up to date as of February 28, 2006. The amount of money that has been either directly assigned to the Fund, or has been pledged to be paid by joint check ($32,416.87) is in excess of the amount due for January, which was $26,242.50. Therefore, we have over paid for January in the amount of $6175.00.

The amount due for February is $11,431.80. If we deduct the above overpayment of $6175.00, the balance due for February is $5257.43, which is enclosed,

Also, attached is the February Remittance Report per your request.

Lastly, we have faxed to you today a signed Change Order with Peabody Const. Co. for $95,679.00, which when paid is also pledged to the Fund.

If I can be of further assistance please contact me at Ext.#25.

Sincerely,

Peter Laughlin

## SETTLEMENT AGREEMENT AND FINAL RELEASE

A.C.T. Abatement Corp., on its behalf and on behalf of itself and all of its current and former parents, subsidiaries, affiliates, sureties, predecessors, successors, assigns, officers, shareholders, members, partners, directors, representatives, attorneys, agents, servants, employees, insurers and sureties, and all other persons or entities on whose behalf A.C.T. may act (collectively "A.C.T."), and the Massachusetts Laborers' Health and Welfare Fund, New England Laborers' Training Trust Fund, Massachusetts Laborers' Pension Fund, Massachusetts Legal Services Fund, and Massachusetts Laborers' Annuity Fund (collectively the "Mass. Laborers"), and Peabody Construction Co., Inc., on its behalf and on behalf of itself and all of its current and former parents, subsidiaries, affiliates, sureties, predecessors, successors, assigns, officers, shareholders, members, partners, directors, representatives, attorneys, agents, servants, employees, insurers and sureties, and all other persons or entities on whose behalf Peabody may act (collectively "Peabody"), and Travelers Casualty and Surety Company of America ("Travelers"), on its behalf and on behalf of itself and all of its current and former parents, subsidiaries, affiliates, sureties, predecessors, successors, assigns, officers, shareholders, members, partners, directors, representatives, attorneys, agents, servants, employees, insurers and sureties, and all other persons or entities on whose behalf Travelers may act (collectively "Travelers"), hereby agree as follows:

1.  Peabody and Travelers, jointly and severally, agree to make payment to A.C.T. and/or the Mass. Laborers on behalf of A.C.T. in the amount of $95,679.34 within 5 business days of December 8, 2006 or as further provided in paragraph 2.

2.  If the City of Newton ("Newton") pays Peabody and/or Travelers the $95,679.34 before December 8, 2006, then Peabody and Travelers agree to make payment to A.C.T. and/or the Mass. Laborers within 5 business days from the date of Newton's payment to Peabody and/or Travelers.

3. Upon payment as provided in paragraphs 1 and 2, A.C.T. and the Mass. Laborers hereby fully and finally releases and forever discharge Peabody and Travelers from any and all debts, demands, actions, causes of action, suits, contracts, bonds, sums of money, accounts, payments, covenants, controversies, agreements, promises, acts and omissions, damages, liabilities in any and all other claims of every kind, nature and description whatsoever, both at law and in equity, which A.C.T. and/or the Mass. Laborers now has, may have, or ever had

against Peabody and Travelers arising out of or in any way connected with the project known as Newton South High School (the "Project"), and payment bond number 103696213, issued by Travelers on behalf of Peabody (the "Bond"), including any and all claims that were asserted and/or which could have been asserted against Peabody and Travelers in the litigation entitled A.C.T. Abatement Corp. v. Peabody Construction Co., Inc. and Travelers Casualty and Surety Company of America, in the Norfolk Superior Court, Civil Action No NOCVCV2005-00525 (the "Norfolk Action"), and against Peabody, as reach and apply defendant, in the litigation entitled Paul J. McNally, Trustee et al. v. A.C.T. Abatement Corp. v. Peabody Construction Co., Inc., in the United States District Court for the District of Massachusetts, Civil Action No. 05-10147RCL (the "Federal Court Action").

4. Upon payment as provided in paragraphs 1 and 2, A.C.T. agrees to dismiss the Norfolk Action with prejudice and agrees to execute and cause to be filed a notice or stipulation of dismissal as appropriate.

5. Upon payment as provided in paragraphs 1 and 2, A.C.T. and the Mass. Laborers agree to dismiss the Federal Court Action, as to Peabody, with prejudice and agree to execute and cause to be filed a notice or stipulation of dismissal as appropriate.

6. A.C.T. and the Mass. Laborers warrant that the subject matter and amount of their claims was fully and truthfully presented to Peabody and Travelers, their agents, attorneys or employees, and that A.C.T. and the Mass. Laborers do not know of any additional credits or offsets which, if disclosed by or conceded as correct by A.C.T. and the Mass. Laborers, might tend to reduce the amount of their claim, and further warrant that all of their contractual obligations have been satisfied in full.

7. A.C.T. and the Mass. Laborers acknowledge that the payment of the above-noted sum does not constitute an admission of liability, which liability is expressly denied; said payment being made solely for the purpose of disposing of disputed claims.

8. As a further inducement for making payment, A.C.T. and the Mass. Laborers hereby agree that all guarantees and warranties required under the terms of their contract pertaining to the work, labor and/or materials furnished in connection with the Project shall remain in full force and effect, in accordance

with their terms which, however, shall not be extended or enlarged hereby; and

9.    A.C.T. further warrants and represents, and hereby certifies that, all just and lawful billings, accounts and/or amounts due from A.C.T., and/or its subcontractors or material suppliers for labor, material and/or equipment employed in the performance of its obligations to the Project have been fully paid in accordance with the terms and conditions of the relevant subcontract(s), and that there are no amounts for which A.C.T. would be responsible under such agreement(s), all amounts having been fully paid and other terms of the relevant subcontract(s), material supply contract(s), or purchase order(s) having been fully complied with by A.C.T.; and

10.    A.C.T. and the Mass. Laborers acknowledge that they have read this Agreement and Release, they have had the advice of counsel with respect to this Agreement and Release, and that its execution are their own free act and will.

11.    The undersigned individual hereby represents that he/she is duly authorized to execute this document on behalf of and to bind A.C.T., the Mass. Laborers, Peabody, and Travelers to the terms of this Agreement and Release.

            In witness whereof, the undersigned has executed this Agreement and Release:

Dated: December 12, 2006        A.C.T. Abatement Corp.,

                                _____
                                Eric Jeter, President

                                _____
                                Witness

Dated: December 12, 2006        MASSACHUSETTS LABORERS' HEALTH
                                AND WELFARE FUND;
                                NEW ENGLAND LABORERS'
                                TRAINING TRUST FUND;
                                MASSACHUSETTS LABORERS' PENSION FUND;
                                MASSACHUSETTS LEGAL SERVICES FUND;
                                MASSACHUSETTS LABORERS' ANNUITY FUND.

                                _____

                                _____
                                Witness

with their terms which, however, shall not be extended or enlarged hereby; and

9.    A.C.T. further warrants and represents, and hereby certifies that, all just and lawful billings, accounts and/or amounts due from A.C.T., and/or its subcontractors or material suppliers for labor, material and/or equipment employed in the performance of its obligations to the Project have been fully paid in accordance with the terms and conditions of the relevant subcontract(s), and that there are no amounts for which A.C.T. would be responsible under such agreement(s), all amounts having been fully paid and other terms of the relevant subcontract(s), material supply contract(s), or purchase order(s) having been fully complied with by A.C.T.; and

10.    A.C.T. and the Mass. Laborers acknowledge that they have read this Agreement and Release, they have had the advice of counsel with respect to this Agreement and Release, and that its execution are their own free act and will.

11.    The undersigned individual hereby represents that he/she is duly authorized to execute this document on behalf of and to bind A.C.T., the Mass. Laborers, Peabody, and Travelers to the terms of this Agreement and Release.

    In witness whereof, the undersigned has executed this Agreement and Release:

Dated: December _____, 2006    A.C.T. Abatement Corp.,

    _____
    Eric Jeter, President

    _____
    Witness

Dated: December _13_, 2006    MASSACHUSETTS LABORERS' HEALTH
    AND WELFARE FUND;
    NEW ENGLAND LABORERS'
    TRAINING TRUST FUND;
    MASSACHUSETTS LABORERS' PENSION FUND;
    MASSACHUSETTS LEGAL SERVICES FUND;
    MASSACHUSETTS LABORERS' ANNUITY FUND.

    _Thomas P. V. Mosillo_
    _Gayle D. Otis_
    Witness

Dated: December __11__, 2006       PEABODY CONSTRUCTION CO., INC.

                                   _____
                                   Edward A. Fish, Jr., President

                                   _____
                                   Witness

Dated: December ____, 2006         TRAVELERS CASUALTY AND SURETY
                                   COMPANY OF AMERICA

                                   _____
                                   Robin Wilcox,
                                   Bond Claims Representative

                                   _____
                                   Witness

DEC 13 2006 15:06 FR ST PAUL-TRAVELERS  860 277 1303 TO 915086265009    P.05

Dated: December ____, 2006       PEABODY CONSTRUCTION CO., INC.

                                 _____
                                 Edward A. Fish, Jr., President


                                 _____
                                 Witness

Dated: December _13_, 2006       TRAVELERS CASUALTY AND SURETY
                                 COMPANY OF AMERICA

                                 _Robin Wilcox_____
                                 Robin Wilcox,
                                 Bond Claims Representative


                                 _Alysha Bg_____
                                 Witness


                                              ** TOTAL PAGE.05 **

## Anne Sills

| | |
|---|---|
| **From:** | Ronald W. Dunbar, Jr. [dunbar@dunbarrodman.com] |
| **Sent:** | Monday, December 11, 2006 1:15 PM |
| **To:** | Anne Sills |
| **Subject:** | Union issue |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Hi Ann,

I will have the check from the Newton South case no later than Friday for $95,679.34. From that amount, I have an attorney's lien for fees, pursuant to G.L. c.221, section 50, in the amount of $10,619.41. Please let me know whether it is acceptable to cut a check to you for $85,059.93 for the Union and a check to my firm for $10,619.41 as payment for its attorney's fees.

Thanks.

Ron

Ronald W. Dunbar, Jr.
Dunbar & Rodman LLP
One Gateway Center, Suite 405
Newton, Massachusetts 02458
tel. (617) 244-3550
fax. (617) 244-6363
dunbar@dunbarrodman.com
www.dunbarrodman.com

## Anne Sills

| | |
|---|---|
| **From:** | Ronald W. Dunbar, Jr. [dunbar@dunbarrodman.com] |
| **Sent:** | Monday, December 11, 2006 1:20 PM |
| **To:** | Anne Sills |
| **Subject:** | FW: A.C.T. - Newton South |

**Attachments:** 10-20-06 ACT settlement agreement and Release.doc

10-20-06 ACT
ttlement agreem

Anne,

Please review and let's talk today.  Once we get faxed signatures to Myles, I can get a check for us.

Thanks.

Ron

Ronald W. Dunbar, Jr.
Dunbar & Rodman LLP
One Gateway Center, Suite 405
Newton, Massachusetts 02458
tel. (617) 244-3550
fax. (617) 244-6363
dunbar@dunbarrodman.com
www.dunbarrodman.com

1

MASSACHUSETTS LABORERS' BENEFIT FUNDS
14 NEW ENGLAND EXECUTIVE PARK-SUITE 200
P.O. BOX 4000, BURLINGTON, MA 01803-0900
TELEPHONE (781) 272-1000
FAX (781) 272-2226
1(800)342-3792

12/14/2006

ERIC X14
A C T ABATEMENT CORP                                    51744
18 BROADWAY
LAWRENCE, MA 01840

DEAR ERIC X14,

OUR RECENT AUDIT OF YOUR LABORERS' PAYROLL RECORDS FOR THE PERIOD OF:
09/2005-11/2006 REVEALED AN OUTSTANDING BALANCE OF: $   80,715.90.

IF APPLICABLE, ATTACHED PLEASE FIND AUDIT REMITTANCE REPORTS LISTING
THE HOURS AND AMOUNTS DUE FOR EACH LABORER BY MONTH. THESE REPORTS
MUST BE RETURNED WITH YOUR CHECK IN ORDER TO INSURE THAT PROPER
CREDIT IS GIVEN TO EACH LABORER.

IN ADDITION, ANY PAST DUE AUDIT BALANCES, OUTSTANDING INTEREST,
UNDERPAYMENTS AND OTHER FEES ARE LISTED BELOW AND ARE DUE AND
PAYABLE AT THIS TIME.

| AUDIT PERIOD | AMOUNT DUE | PYMTS/ADJ RECVD | BALANCE DUE |
|---|---|---|---|
| 11/2006-11/2006 | 13,046.80 | .00 | 13,046.80 |
| 07/2006-10/2006 | 24,471.20 | .00 | 24,471.20 |
| 03/2006-06/2006 | 43,683.11 | 20,636.90 | 23,046.21 |
| 02/2006-02/2006 | .00 | .00 | .00 |
| 01/2006-01/2006 | .00 | .00 | .00 |
| 09/2005-12/2005 | 20,151.69 | .00 | 20,151.69 |
| 08/2005-08/2005 | 29,682.95 | .00 | 29,682.95 |
| 01/2005-07/2005 | 200,917.38 | 95,736.21 | 105,181.17 |
| 06/2004-12/2004 | 119,020.14 | 119,027.63 | 7.49- |
| 05/2004-05/2004 | 31,360.52 | 31,359.64 | .88 |
| 01/2004-04/2004 | 256,823.10 | 256,823.01 | .09 |
| 04/2003-12/2003 | 42,212.09 | 42,212.08 | .01 |

TOTAL HOUR CARD:                                              .00

OUTSTANDING A/R:                                        57,954.47

AUDIT FEES:                                                  .00

LAWYERS FEES:                                                .00

_____

NET AMOUNT DUE:                                        273,527.98

MASSACHUSETTS LABORERS' BENEFIT FUNDS
14 NEW ENGLAND EXECUTIVE PARK-SUITE 200
P.O. BOX 4000, BURLINGTON, MA 01803-0900
TELEPHONE (781) 272-1000
FAX (781) 272-2226
1(800)342-3792

UPON RECEIPT OF ANY DELINQUENT CONTRIBUTIONS TO THE FUND OFFICE,
INTEREST WILL BE ASSESSED AT THE RATE(S) IN EFFECT FROM THE DATE OF
THE DELINQUENCY. ALL OTHER AUDIT RELATED AMOUNTS LISTED ABOVE ARE DUE
30 DAYS FROM THE DATE CHARGED. IF PAYMENT FOR THESE ITEMS IS NOT
RECEIVED ON OR BEFORE THAT DATE, INTEREST WILL BE CHARGED ON THESE
ITEMS AS WELL. INTEREST WILL BE COMPOUNDED MONTHLY AT THE RATE
CURRENTLY IN EFFECT.

ANY DELINQUENCY IS IN VIOLATION OF THE LABORERS' AGREEMENT ARTICLE
XI - XVII. UNLESS PAYMENT IN FULL IS RECEIVED WITHIN TEN(10) DAYS WE
ARE OBLIGATED BY ARTICLE XVII TO SEND YOU A SEVENTY-TWO(72) HOUR
NOTICE. IF A SEVENTY-TWO(72) HOUR NOTICE IS ISSUED, ANY LABORERS WHO
ARE AFFECTED BY YOUR DELINQUENCY SHALL BE PAID THEIR NORMAL WAGES
UNTIL THE DELINQUENCY IS CURED AND LABORERS RESUME THEIR WORK. IN
ADDITION, YOU WILL BE REQUIRED TO FURNISH A TEN THOUSAND DOLLAR
($10,000.00) SURETY BOND TO EACH OF THE FUNDS. YOU WILL ALSO ASSUME
RESPONSIBILITY FOR ANY AND ALL ATTORNEY'S FEES, SHERIFF'S COSTS,
ACCOUNTING AND COURT COSTS INVOLVED, AND LIQUIDATED DAMAGES OF TWENTY
PERCENT(20%) OF THE DELINQUENT AMOUNT.

THANK YOU FOR YOUR ANTICIPATED COOPERATION.

VERY TRULY YOURS,

FIELD AUDITOR
MASS. LABORERS' BENEFIT FUNDS

ENCLOSURE

CC:

## MASSACHSUETTS LABORERS' BENEFIT FUNDS
## FIELD AUDIT REPORT

Audit Performed by:      Mike Tracia

Contractor:      ACT Abatement

Contractor #      51744

Address:      18 Broadway Lawrence,Ma.01840

Local #      1421

Date Signed:      May-95

Contact Person:      Eric

Audit Control #      2003 _____ 2004 _____ 2005 __20421 2006

         20258
         20423
         20598

Audit date:      12/12/06

Audit Period:      9/2005-11/2006

Last audit date:      8/2005

Reason for audit:      Request

**Contractor Balance Due?**      YES ___x___    NO _____

**If yes, balance due because of:**

Delinquent:      x

Shortage in hours reported:      x

Failure to pay contributions on certain laborers:      x

**Types of records reviewed:**

Payroll registers:      x

Employee Histories:      _____

Federal Tax Form 941:      x

Certified Payrolls      _____

MA State Tax Form WR-1:      x

Other:      _____

**Audit Performed Via:**      BCH-270- ___x___   Excel- _____   Manual- _____

## Summary of Amount Due

| | |
|---|---|
| **2003** | _____ |
| **2004** | _____ |
| **2005** | $20,151.69 |
| **2006** | $60,564.21 |
| **TOTAL** | $80,715.90 |

Contact agrees with findings:          **Yes:** _____   **\*\*NO:** _____
\*\* Reason:    _____

Contractor needs time to review audit findings

## Audit Summary

Contractor is delinquent for October 2006.Some hours were reported for September 2006

Audit includes November 2006

Additional hours picked up for laborers.All hours were biiled at the wrecking rate or zone 1

If the contractor provides job breakdown of hours it will reduce the audit balance by the rate difference.

The audit balance may also be reduced if some hours were worked outside jurisdiction.

REAUREMRPT                    MASS LABORERS BENEFIT FUND                          PAGE      1
                                14 N. E. EXECUTIVE PARK
                                     P. O. BOX 4000
                               BURLINGTON, MA  01803-0900
                                   TEL. (617) 272-1000
          12/14/06              AUDIT REMITTANCE REPORT                            MZT

EMPLOYER: 51744                                     REPORT DATE:       9/2005
A C T ABATEMENT CORP                                ZONE. . . .:        MA 01
18 BROADWAY                                         CONTRACT # :         YEA2
LAWRENCE, MA                        01840           AUDIT # . .:        20421


MEMBERS          MEMBERS        LOCAL      HOURS                AMOUNT    HOURS      CUM
SOC SEC #         NAME          NO.        DUE        RATE       DUE      PAID   AMOUNT DUE

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 GUDIEL, FRANC       1421      17.25    15.750       271.69  _____     271.69


                    *TOTAL DUE:           17.25     HRS         271.69             271.69
                    *TOTAL PAID:      _____            _____
                    *BALANCE:         _____            _____

                    *EMPLOYEES LISTED:         1
                    *EMPLOYEES PAID:      _____

```
REAUREMRPT              MASS LABORERS BENEFIT FUND              PAGE       2
                           14 N. E. EXECUTIVE PARK
                              P. O. BOX 4000
                        BURLINGTON, MA  01803-0900
                           TEL. (617) 272-1000
        12/14/06          AUDIT REMITTANCE REPORT                    MZT
```

EMPLOYER: 51744                               REPORT DATE:      10/2005
A C T ABATEMENT CORP                          ZONE. . . .:        MA 01
18 BROADWAY                                   CONTRACT # :         AGC2
LAWRENCE, MA                    01840         AUDIT # . .:        20421

| MEMBERS SOC SEC # | MEMBERS NAME | LOCAL NO. | HOURS DUE | RATE | AMOUNT DUE | HOURS PAID | CUM AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 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 | HOPKINS, BRUC | 1421 | 127.00 | 15.750 | 2000.25 | _____ | 2271.94 |
| 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 | RECINOS, MARI | 1421 | 43.50 | 15.750 | 685.13 | _____ | 2957.07 |
| 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 | LEMUS, MANUEL | 1421 | 72.00 | 15.750 | 1134.00 | _____ | 4091.07 |
| 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 | BALTAZAR, GER | 1421 | 157.00 | 15.750 | 2472.75 | _____ | 6563.82 |
| 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 | BATISTA, ANGE | 175 | 24.00 | 15.750 | 378.00 | _____ | 6941.82 |
| 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 | SOLIS, EUGENI | | 16.00 | 15.750 | 252.00 | _____ | 7193.82 |
| 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 | LOPEZ, RODOLF | 1421 | 24.00 | 15.750 | 378.00 | _____ | 7571.82 |
| 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 | HOPKINS, BRAN | 14 | 8.00 | 15.750 | 126.00 | _____ | 7697.82 |
| 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 | VELASQUEZ, ED | 1421 | 8.00 | 15.750 | 126.00 | _____ | 7823.82 |
| 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 | RODRIGUEZ-BAU | 1421 | 173.00 | 15.750 | 2724.75 | _____ | 10548.57 |
| 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 | REYES, RUDY | 1421 | 176.00 | 15.750 | 2772.00 | _____ | 13320.57 |
| 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 | LIMA, HECTOR | 1421 | 24.00 | 15.750 | 378.00 | _____ | 13698.57 |
| 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 | ESTRADA, MAYN | 1421 | 164.00 | 15.750 | 2583.00 | _____ | 16281.57 |
| 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 | GUZMAN, RUBEN | 1421 | 44.75 | 15.750 | 704.81 | _____ | 16986.38 |
| 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 | GUDIEL, FRANC | 1421 | 24.00 | 15.750 | 378.00 | _____ | 17364.38 |
| 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 | RECINOS, JUAN | 1421 | 34.00 | 15.750 | 535.50 | _____ | 17899.88 |

```
               *TOTAL DUE:     1119.25   HRS     17628.19            17899.88
               *TOTAL PAID:   _____          _____
               *BALANCE:      _____          _____

               *EMPLOYEES LISTED:     16
               *EMPLOYEES PAID:     _____
```

REAUREMRPT

PAGE       3

MASS LABORERS BENEFIT FUND
14 N. E. EXECUTIVE PARK
P. O. BOX 4000
BURLINGTON, MA  01803-0900
TEL. (617) 272-1000

12/14/06                      AUDIT REMITTANCE REPORT                      MZT

EMPLOYER: 51744                          REPORT DATE:      11/2005
A C T ABATEMENT CORP                     ZONE. . . .:        MA 01
18 BROADWAY                              CONTRACT # :         AGC2
LAWRENCE, MA              01840          AUDIT # . .:        20421

| MEMBERS SOC SEC # | MEMBERS NAME | LOCAL NO. | HOURS DUE | RATE | AMOUNT DUE | HOURS PAID | CUM AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 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 | RECINOS, MARI | 1421 | 5.00 | 15.750 | 78.75 | _____ | 17978.63 |
| 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 | BATISTA, RAMO | 175 | 24.00 | 15.750 | 378.00 | _____ | 18356.63 |
| 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 | BATISTA, JOSE | 175 | 24.00 | 15.750 | 378.00 | _____ | 18734.63 |
| 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 | BALTAZAR, GER | 1421 | 7.00- | 15.750 | 110.25- | _____ | 18624.38 |
| 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 | BATISTA, ANGE | 175 | 36.00 | 15.750 | 567.00 | _____ | 19191.38 |
| 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 | SOLIS, EUGENI | | 12.00 | 15.750 | 189.00 | _____ | 19380.38 |
| 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 | LOPEZ, RODOLF | 1421 | 4.00 | 15.750 | 63.00 | _____ | 19443.38 |
| 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 | RODRIGUEZ-BAU | 1421 | 25.00- | 15.750 | 393.75- | _____ | 19049.63 |
| 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 | REYES, RUDY | 1421 | 23.00 | 15.750 | 362.25 | _____ | 19411.88 |
| 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 | LIMA, HECTOR | 1421 | 25.00 | 15.750 | 393.75 | _____ | 19805.63 |
| 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 | ESTRADA, MAYN | 1421 | 2.00 | 15.750 | 31.50 | _____ | 19837.13 |
| 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 | GUZMAN, RUBEN | 1421 | 49.75 | 15.750 | 783.56 | _____ | 20620.69 |
| 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 | GUDIEL, FRANC | 1421 | 21.00 | 15.750 | 330.75 | _____ | 20951.44 |
| 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 | RECINOS, JUAN | 1421 | 8.00 | 15.750 | 126.00 | _____ | 21077.44 |

```
              *TOTAL DUE:      201.75   HRS      3177.56        21077.44
              *TOTAL PAID:   _____        _____
              *BALANCE:      _____        _____

              *EMPLOYEES LISTED:      14
              *EMPLOYEES PAID:     _____
```

```
REAUREMRPT                    MASS LABORERS BENEFIT FUND                      PAGE      4
                               14 N. E. EXECUTIVE PARK
                                  P. O. BOX 4000
                              BURLINGTON, MA  01803-0900
                                 TEL. (617) 272-1000
      12/14/06                 AUDIT REMITTANCE REPORT                               MZT


 EMPLOYER: 51744                                    REPORT DATE:      12/2005
 A C T ABATEMENT CORP                               ZONE. . . .:        MA 01
 18 BROADWAY                                        CONTRACT # :         AGC2
 LAWRENCE, MA                       01840           AUDIT # . .:        20421
```

| MEMBERS SOC SEC # | MEMBERS NAME | LOCAL NO. | HOURS DUE | RATE | AMOUNT DUE | HOURS PAID | CUM AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 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 | HOPKINS, BRUC | 1421 | 25.00- | 16.100 | 402.50- | _____ | 20674.94 |
| 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 | RECINOS, MARI | 1421 | 21.00- | 16.100 | 338.10- | _____ | 20336.84 |
| 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 | BALTAZAR, GER | 1421 | 18.00- | 16.100 | 289.80- | _____ | 20047.04 |
| 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 | BATISTA, ANGE | 175 | 20.00- | 16.100 | 322.00- | _____ | 19725.04 |
| 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 | SOLIS, EUGENI | | 21.50- | 16.100 | 346.15- | _____ | 19378.89 |
| 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 | LOPEZ, RODOLF | 1421 | 135.50 | 16.100 | 2181.55 | _____ | 21560.44 |
| 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 | REYES, RUDY | 1421 | 13.00- | 16.100 | 209.30- | _____ | 21351.14 |
| 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 | LIMA, HECTOR | 1421 | 25.00- | 16.100 | 402.50- | _____ | 20948.64 |
| 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 | ESTRADA, MAYN | 1421 | 13.00- | 16.100 | 209.30- | _____ | 20739.34 |
| 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 | GUDIEL, FRANC | 1421 | 16.50- | 16.100 | 265.65- | _____ | 20473.69 |
| 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 | RECINOS, JUAN | 1421 | 20.00- | 16.100 | 322.00- | _____ | 20151.69 |

```
                    *TOTAL DUE:          57.50-  HRS        925.75-            20151.69
                    *TOTAL PAID:     _____           _____
                    *BALANCE:        _____           _____

                    *EMPLOYEES LISTED:        11
                    *EMPLOYEES PAID:      _____
```

REAUREMRPT

PAGE     1

MASS LABORERS BENEFIT FUND
14 N. E. EXECUTIVE PARK
P. O. BOX 4000
BURLINGTON, MA   01803-0900
TEL. (617) 272-1000

12/14/06                    AUDIT REMITTANCE REPORT                    MZT

EMPLOYER: 51744                          REPORT DATE:      3/2006
A C T ABATEMENT CORP                     ZONE. . . .:      MA 00
18 BROADWAY                              CONTRACT # :      WRK5
LAWRENCE, MA                01840        AUDIT # . .:      20258

| MEMBERS SOC SEC # | MEMBERS NAME | LOCAL NO. | HOURS DUE | RATE | AMOUNT DUE | HOURS PAID | CUM AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 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 | HOPKINS, BRUC | 1421 | 2.00 | 16.300 | 32.60 | _____ | 32.60 |
| 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 | ROSARIO, RAMO | 175 | 8.00 | 16.300 | 130.40 | _____ | 163.00 |
| 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 | LIMA, HECTOR | 1421 | 32.00- | 16.300 | 521.60- | _____ | 358.60- |

                *TOTAL DUE:        22.00-  HRS        358.60-              358.60-
                *TOTAL PAID:    _____           _____
                *BALANCE:       _____           _____

                *EMPLOYEES LISTED:       3
                *EMPLOYEES PAID:     _____

REAUREMRPT                                                                                      PAGE        2

MASS LABORERS BENEFIT FUND
14 N. E. EXECUTIVE PARK
P. O. BOX 4000
BURLINGTON, MA  01803-0900
TEL. (617) 272-1000

12/14/06                      AUDIT REMITTANCE REPORT                              MZT

EMPLOYER: 51744                                    REPORT DATE:      4/2006
A C T ABATEMENT CORP                               ZONE. . . .:      MA 00
18 BROADWAY                                        CONTRACT # :      WRK5
LAWRENCE, MA                    01840              AUDIT # . .:      20258

| MEMBERS<br>SOC SEC # | MEMBERS<br>NAME | LOCAL<br>NO. | HOURS<br>DUE | RATE | AMOUNT<br>DUE | HOURS<br>PAID | CUM<br>AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 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 | HOPKINS, BRUC | 1421 | 11.33 | 16.300 | 184.68 | _____ | 173.92- |
| 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 | BATISTA, JOSE | 175 | 8.00 | 16.300 | 130.40 | _____ | 43.52- |
| 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 | BATISTA, ANGE | 175 | 6.00 | 16.300 | 97.80 | _____ | 54.28 |
| 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 | GUDIEL, MARIO | | 85.00 | 16.300 | 1385.50 | _____ | 1439.78 |
| 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 | BETHANCOURT, | 1421 | 8.00 | 16.300 | 130.40 | _____ | 1570.18 |
| 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 | CALDERON, MAR | 1421 | 102.00 | 16.300 | 1662.60 | _____ | 3232.78 |
| 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 | GUDIEL, WILSO | 1421 | 102.00 | 16.300 | 1662.60 | _____ | 4895.38 |
| 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 | HOPKINS, BRAN | 14 | 15.00- | 16.300 | 244.50- | _____ | 4650.88 |
| 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 | RODRIGUEZ-BAU | 1421 | 9.00- | 16.300 | 146.70- | _____ | 4504.18 |
| 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 | REYES, RUDY | 1421 | 8.00 | 16.300 | 130.40 | _____ | 4634.58 |
| 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 | LIMA, HECTOR | 1421 | 8.00 | 16.300 | 130.40 | _____ | 4764.98 |
| 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 | GUDIEL, FRANC | 1421 | 64.00 | 16.300 | 1043.20 | _____ | 5808.18 |
| 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 | GONZALEZ, ENR | | 59.00 | 16.300 | 961.70 | _____ | 6769.88 |
| 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 | RECINOS, JUAN | 1421 | 32.00- | 16.300 | 521.60- | _____ | 6248.28 |

```
*TOTAL DUE:       405.33   HRS        6606.88              6248.28
*TOTAL PAID:    _____                  _____
*BALANCE:       _____                  _____

*EMPLOYEES LISTED:      14
*EMPLOYEES PAID:     _____
```

```
REAUREMRPT                    MASS LABORERS BENEFIT FUND                         PAGE        3
                              14 N. E. EXECUTIVE PARK
                                  P. O. BOX 4000
                              BURLINGTON, MA  01803-0900
                                TEL. (617) 272-1000
       12/14/06               AUDIT REMITTANCE REPORT                            MZT


EMPLOYER: 51744                                          REPORT DATE:       5/2006
A C T ABATEMENT CORP                                     ZONE. . . .:       MA 00
18 BROADWAY                                              CONTRACT # :       WRK5
LAWRENCE, MA                        01840                AUDIT # . .:       20258
```

| MEMBERS<br>SOC SEC # | MEMBERS<br>NAME | LOCAL<br>NO. | HOURS<br>DUE | RATE | AMOUNT<br>DUE | HOURS<br>PAID | CUM<br>AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 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 | HOPKINS, BRUC | 1421 | 41.00 | 16.300 | 668.30 | _____ | 6916.58 |
| 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 | RODRIGUEZ-COL | 1421 | 56.00 | 16.300 | 912.80 | _____ | 7829.38 |
| 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 | BRITO, MANUEL | 1421 | 8.00 | 16.300 | 130.40 | _____ | 7959.78 |
| 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 | COOKE, DEREK | 22 | 32.00 | 16.300 | 521.60 | _____ | 8481.38 |
| 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 | RECINOS, MARI | 1421 | 134.00 | 16.300 | 2184.20 | _____ | 10665.58 |
| 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 | BATISTA, RAMO | 175 | 32.00- | 16.300 | 521.60- | _____ | 10143.98 |
| 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 | BATISTA, JOSE | 175 | 72.00 | 16.300 | 1173.60 | _____ | 11317.58 |
| 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 | BATISTA, ANGE | 175 | 56.00 | 16.300 | 912.80 | _____ | 12230.38 |
| 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 | GUDIEL, MARIO | | 78.00 | 16.300 | 1271.40 | _____ | 13501.78 |
| 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 | PIMENTEL, JOS | 1421 | 8.00 | 16.300 | 130.40 | _____ | 13632.18 |
| 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 | SOLIS, EUGENI | | 34.50 | 16.300 | 562.35 | _____ | 14194.53 |
| 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 | GARCIA, BYRON | 175 | 83.00 | 16.300 | 1352.90 | _____ | 15547.43 |
| 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 | DIAZ, ANNIBAL | | 8.00 | 16.300 | 130.40 | _____ | 15677.83 |
| 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 | HARRIS, CUTHE | | 112.00 | 16.300 | 1825.60 | _____ | 17503.43 |
| 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 | LOPEZ, RODOLF | 1421 | 72.00 | 16.300 | 1173.60 | _____ | 18677.03 |
| 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 | CALDERON, MAR | 1421 | 41.50 | 16.300 | 676.45 | _____ | 19353.48 |
| 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 | GUDIEL, WILSO | 1421 | 96.00 | 16.300 | 1564.80 | _____ | 20918.28 |
| 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 | RODRIGUEZ-BAU | 1421 | 120.00 | 16.300 | 1956.00 | _____ | 22874.28 |
| 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 | SANTIAGO, EFR | 1421 | 8.00 | 16.300 | 130.40 | _____ | 23004.68 |
| 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 | CORRIEA, MELV | | 32.00 | 16.300 | 521.60 | _____ | 23526.28 |
| 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 | MOSQUEA, GILB | 175 | 8.00 | 16.300 | 130.40 | _____ | 23656.68 |
| 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 | REYES, RUDY | 1421 | 99.00 | 16.300 | 1613.70 | _____ | 25270.38 |
| 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 | LIMA, HECTOR | 1421 | 142.00 | 16.300 | 2314.60 | _____ | 27584.98 |
| 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 | LOPEZ, GERSON | | 24.00 | 16.300 | 391.20 | _____ | 27976.18 |
| 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 | GUDIEL, FRANC | 1421 | 104.50 | 16.300 | 1703.35 | _____ | 29679.53 |
| 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 | GONZALEZ, ENR | | 162.75 | 16.300 | 2652.83 | _____ | 32332.36 |
| 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 | RECINOS, JUAN | 1421 | 32.00 | 16.300 | 521.60 | _____ | 32853.96 |
| 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 | RECINOS, WALT | 1421 | 80.00 | 16.300 | 1304.00 | _____ | 34157.96 |

```
                   *TOTAL DUE:          1712.25   HRS        27909.68              34157.96
                   *TOTAL PAID:       _____             _____
                   *BALANCE:          _____             _____

                   *EMPLOYEES LISTED:      28
                   *EMPLOYEES PAID:     _____
```

REAUREMRPT                      MASS LABORERS BENEFIT FUND                      PAGE      4
                                14 N. E. EXECUTIVE PARK
                                    P. O. BOX 4000
                                BURLINGTON, MA  01803-0900
                                   TEL. (617) 272-1000
        12/14/06                 AUDIT REMITTANCE REPORT                          MZT

EMPLOYER: 51744                                      REPORT DATE:      6/2006
A C T ABATEMENT CORP                                 ZONE. . . .:       MA 00
18 BROADWAY                                          CONTRACT # :        WRK5
LAWRENCE, MA                         01840           AUDIT # . .:       20258

| MEMBERS SOC SEC # | MEMBERS NAME | LOCAL NO. | HOURS DUE | RATE | AMOUNT DUE | HOURS PAID | CUM AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 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 | HOPKINS, BRUC | 1421 | 201.00- | 16.900 | 3396.90- | _____ | 30761.06 |
| 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 | IRIZARRY, SAM | | 23.00 | 16.900 | 388.70 | _____ | 31149.76 |
| 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 | RODRIGUEZ-COL | 1421 | 14.00- | 16.900 | 236.60- | _____ | 30913.16 |
| 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 | COOKE, DEREK | 22 | 153.00- | 16.900 | 2585.70- | _____ | 28327.46 |
| 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 | ROSARIO, RAMO | 175 | 207.50- | 16.900 | 3506.75- | _____ | 24820.71 |
| 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 | RECINOS, MARI | 1421 | 98.00 | 16.900 | 1656.20 | _____ | 26476.91 |
| 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 | BATISTA, RAMO | 175 | 38.00 | 16.900 | 642.20 | _____ | 27119.11 |
| 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 | BATISTA, JOSE | 175 | 138.00- | 16.900 | 2332.20- | _____ | 24786.91 |
| 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 | BALTAZAR, GER | 1421 | 88.00 | 16.900 | 1487.20- | _____ | 23299.71 |
| 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 | BATISTA, ANGE | 175 | 112.00- | 16.900 | 1892.80- | _____ | 21406.91 |
| 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 | GUDIEL, MARIO | | 108.00 | 16.900 | 1825.20 | _____ | 23232.11 |
| 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 | ORTEGA, LUIS | 1421 | 16.00 | 16.900 | 270.40- | _____ | 22961.71 |
| 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 | SOLIS, EUGENI | | 80.00 | 16.900 | 1352.00- | _____ | 21609.71 |
| 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 | LOPEZ, RODOLF | 1421 | 77.00- | 16.900 | 1301.30- | _____ | 20308.41 |
| 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 | LIMA, EDUARDO | 1421 | 21.00- | 16.900 | 354.90- | _____ | 19953.51 |
| 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 | HAN, HAM | 22 | 16.00 | 16.900 | 270.40 | _____ | 20223.91 |
| 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 | HAN, HEAP | | 24.00 | 16.900 | 405.60 | _____ | 20629.51 |
| 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 | BETHANCOURT, | 1421 | 40.00- | 16.900 | 676.00- | _____ | 19953.51 |
| 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 | SUAY, SOS | 1421 | 24.00 | 16.900 | 405.60 | _____ | 20359.11 |
| 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 | CALDERON, MAR | 1421 | 72.00 | 16.900 | 1216.80 | _____ | 21575.91 |
| 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 | GUDIEL, WILSO | 1421 | 32.00 | 16.900 | 540.80 | _____ | 22116.71 |
| 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 | HOPKINS, BRAN | 14 | 158.00- | 16.900 | 2670.20- | _____ | 19446.51 |
| 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 | RODRIGUEZ-BAU | 1421 | 104.00 | 16.900 | 1757.60 | _____ | 21204.11 |
| 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 | CORRIEA, MELV | | 23.00 | 16.900 | 388.70 | _____ | 21592.81 |
| 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 | MOSQUEA, GILB | 175 | 156.00- | 16.900 | 2636.40- | _____ | 18956.41 |
| 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 | REYES, RUDY | 1421 | 41.00- | 16.900 | 692.90- | _____ | 18263.51 |
| 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 | LIMA, HECTOR | 1421 | 38.50 | 16.900 | 650.65 | _____ | 18914.16 |
| 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 | LOPEZ, GERSON | | 8.00 | 16.900 | 135.20 | _____ | 19049.36 |
| 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 | GUDIEL, FRANC | 1421 | 46.50 | 16.900 | 785.85 | _____ | 19835.21 |
| 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 | RECINOS, JUAN | 1421 | 105.00 | 16.900 | 1774.50 | _____ | 21609.71 |
| 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 | RECINOS, WALT | 1421 | 85.00 | 16.900 | 1436.50 | _____ | 23046.21 |

                        *TOTAL DUE:       657.50-   HRS      11111.75-           23046.21
                        *TOTAL PAID:     _____          _____
                        *BALANCE:        _____          _____

                        *EMPLOYEES LISTED:       31
                        *EMPLOYEES PAID:      _____

REAUREMRPT                    MASS LABORERS BENEFIT FUND                    PAGE        1
                              14 N. E. EXECUTIVE PARK
                                  P. O. BOX 4000
                              BURLINGTON, MA  01803-0900
                                 TEL. (617) 272-1000
        12/14/06              AUDIT REMITTANCE REPORT                        MZT

EMPLOYER: 51744                                    REPORT DATE:      7/2006
A C T ABATEMENT CORP                               ZONE. . . .:      MA 00
18 BROADWAY                                        CONTRACT # :      WRK5
LAWRENCE, MA                    01840              AUDIT # . .:      20423


| MEMBERS<br>SOC SEC # | MEMBERS<br>NAME | LOCAL<br>NO. | HOURS<br>DUE | RATE | AMOUNT<br>DUE | HOURS<br>PAID | CUM<br>AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 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 | ROSARIO, RAMO | 175 | 40.00 | 16.900 | 676.00 | _____ | 676.00 |
| 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 | BATISTA, RAMO | 175 | 16.00 | 16.900 | 270.40 | _____ | 946.40 |
| 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 | MARANO, THOMA | 175 | 40.00 | 16.900 | 676.00 | _____ | 1622.40 |
| 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 | BATISTA, ANGE | 175 | 32.00 | 16.900 | 540.80 | _____ | 2163.20 |
| 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 | HOPKINS, BRAN | 14 | 40.00 | 16.900 | 676.00 | _____ | 2839.20 |
| 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 | LIMA, HECTOR | 1421 | 32.00 | 16.900 | 540.80 | _____ | 3380.00 |

                    *TOTAL DUE:      200.00    HRS      3380.00              3380.00
                    *TOTAL PAID:   _____            _____
                    *BALANCE:      _____            _____

                    *EMPLOYEES LISTED:        6
                    *EMPLOYEES PAID:     _____

```
REAUREMRPT                    MASS LABORERS BENEFIT FUND                    PAGE      2
                              14 N. E. EXECUTIVE PARK
                                 P. O. BOX 4000
                              BURLINGTON, MA  01803-0900
                                TEL. (617) 272-1000
         12/14/06             AUDIT REMITTANCE REPORT                            MZT


EMPLOYER: 51744                                    REPORT DATE:      8/2006
A C T ABATEMENT CORP                               ZONE. . . . .:    MA 00
18 BROADWAY                                        CONTRACT # :      WRK5
LAWRENCE, MA                       01840           AUDIT # . .:      20423
```

| MEMBERS SOC SEC # | MEMBERS NAME | LOCAL NO. | HOURS DUE | RATE | AMOUNT DUE | HOURS PAID | CUM AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 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 | WALSH, RICHAR | 560 | 24.00 | 16.900 | 405.60 | _____ | 3785.60 |
| 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 | RECINOS, MARI | 1421 | 70.00- | 16.900 | 1183.00- | _____ | 2602.60 |
| 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 | BATISTA, RAMO | 175 | 16.00- | 16.900 | 270.40- | _____ | 2332.20 |
| 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 | MARANO, THOMA | 175 | 2.00- | 16.900 | 33.80- | _____ | 2298.40 |
| 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 | LEMUS, MANUEL | 1421 | 56.00- | 16.900 | 946.40- | _____ | 1352.00 |
| 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 | BATISTA, ANGE | 175 | 16.00- | 16.900 | 270.40- | _____ | 1081.60 |
| 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 | SOLIS, EUGENI | | 32.00- | 16.900 | 540.80- | _____ | 540.80 |
| 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 | HOPKINS, BRAN | 14 | 40.00- | 16.900 | 676.00- | _____ | 135.20- |
| 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 | LIMA, HECTOR | 1421 | 81.00 | 16.900 | 1368.90 | _____ | 1233.70 |
| 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 | RECINOS, WALT | 1421 | 30.00- | 16.900 | 507.00- | _____ | 726.70 |

```
                    *TOTAL DUE:       157.00-   HRS      2653.30-              726.70
                    *TOTAL PAID:    _____            _____
                    *BALANCE:       _____            _____

                    *EMPLOYEES LISTED:      10
                    *EMPLOYEES PAID:     _____
```

REAUREMRPT

MASS LABORERS BENEFIT FUND
14 N. E. EXECUTIVE PARK
P. O. BOX 4000
BURLINGTON, MA  01803-0900
TEL. (617) 272-1000
AUDIT REMITTANCE REPORT

PAGE        3

12/14/06

MZT

EMPLOYER: 51744
A C T ABATEMENT CORP
18 BROADWAY
LAWRENCE, MA                    01840

REPORT DATE:      9/2006
ZONE. . . .:      MA 00
CONTRACT # :      WRK5
AUDIT # . .:      20423

| MEMBERS SOC SEC # | MEMBERS NAME | LOCAL NO. | HOURS DUE | RATE | AMOUNT DUE | HOURS PAID | CUM AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 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 | ROSARIO, RAMO | 175 | 143.00 | 16.900 | 2416.70 | _____ | 3143.40 |
| 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 | WALSH, RICHAR | 560 | 16.00 | 16.900 | 270.40 | _____ | 3413.80 |
| 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 | PENA, ROBERTO | 175 | 32.00 | 16.900 | 540.80 | _____ | 3954.60 |
| 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 | BATISTA, RAMO | 175 | 32.00 | 16.900 | 540.80 | _____ | 4495.40 |
| 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 | MARANO, THOMA | 175 | 172.50 | 16.900 | 2915.25 | _____ | 7410.65 |
| 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 | HAMPE, PAUL D | 223 | 24.00 | 16.900 | 405.60 | _____ | 7816.25 |
| 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 | BATISTA, ANGE | 175 | 8.00 | 16.900 | 135.20 | _____ | 7951.45 |
| 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 | SOLIS, EUGENI | | 41.50 | 16.900 | 701.35 | _____ | 8652.80 |
| 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 | RECINOS, WALT | 1421 | 40.00 | 16.900 | 676.00 | _____ | 9328.80 |

*TOTAL DUE:        509.00   HRS      8602.10                9328.80
*TOTAL PAID:     _____            _____
*BALANCE:        _____            _____

*EMPLOYEES LISTED:        9
*EMPLOYEES PAID:     _____

REAUREMRPT                    MASS LABORERS BENEFIT FUND                    PAGE        4
                              14 N. E. EXECUTIVE PARK
                                 P. O. BOX 4000
                             BURLINGTON, MA  01803-0900
                               TEL. (617) 272-1000
        12/14/06              AUDIT REMITTANCE REPORT                       MZT

EMPLOYER: 51744                                    REPORT DATE:      10/2006
A C T ABATEMENT CORP                               ZONE. . . .:        MA 00
18 BROADWAY                                        CONTRACT # :         WRK5
LAWRENCE, MA                      01840            AUDIT # . .:        20423

| MEMBERS<br>SOC SEC # | MEMBERS<br>NAME | LOCAL<br>NO. | HOURS<br>DUE | RATE | AMOUNT<br>DUE | HOURS<br>PAID | CUM<br>AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 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 | ROSARIO, RAMO | 175 | 40.00 | 16.900 | 676.00 | _____ | 10004.80 |
| 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 | WALSH, RICHAR | 560 | 60.00 | 16.900 | 1014.00 | _____ | 11018.80 |
| 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 | RECINOS, MARI | 1421 | 37.00 | 16.900 | 625.30 | _____ | 11644.10 |
| 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 | PENA, ROBERTO | 175 | 98.00 | 16.900 | 1656.20 | _____ | 13300.30 |
| 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 | BATISTA, RAMO | 175 | 112.00 | 16.900 | 1892.80 | _____ | 15193.10 |
| 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 | MARANO, THOMA | 175 | 117.00 | 16.900 | 1977.30 | _____ | 17170.40 |
| 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 | BATISTA, ANGE | 175 | 64.00 | 16.900 | 1081.60 | _____ | 18252.00 |
| 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 | LIMA, HECTOR | 1421 | 72.00 | 16.900 | 1216.80 | _____ | 19468.80 |
| 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 | ORDONEZ, ARMA | | 152.00 | 16.900 | 2568.80 | _____ | 22037.60 |
| 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 | RECINOS, JUAN | 1421 | 16.00 | 16.900 | 270.40 | _____ | 22308.00 |
| 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 | RECINOS, WALT | 1421 | 128.00 | 16.900 | 2163.20 | _____ | 24471.20 |

                    *TOTAL DUE:        896.00    HRS        15142.40              24471.20
                    *TOTAL PAID:    _____           _____
                    *BALANCE:       _____           _____

                    *EMPLOYEES LISTED:       11
                    *EMPLOYEES PAID:      _____

REAUREMRPT                     MASS LABORERS BENEFIT FUND                    PAGE    1
                                14 N. E. EXECUTIVE PARK
                                    P. O. BOX 4000
                               BURLINGTON, MA  01803-0900
                                  TEL. (617) 272-1000
         12/14/06                AUDIT REMITTANCE REPORT                      MZT

EMPLOYER: 51744                              REPORT DATE:      11/2006
A C T ABATEMENT CORP                         ZONE. . . .:       MA 00
18 BROADWAY                                  CONTRACT # :        WRK5
LAWRENCE, MA                      01840      AUDIT # . .:       20598

| MEMBERS SOC SEC # | MEMBERS NAME | LOCAL NO. | HOURS DUE | RATE | AMOUNT DUE | HOURS PAID | CUM AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| 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 | ROSARIO, RAMO | 175 | 39.50 | 16.900 | 667.55 | _____ | 667.55 |
| 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 | WALSH, RICHAR | 560 | 8.00 | 16.900 | 135.20 | _____ | 802.75 |
| 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 | SALCEDO, TIBU | 560 | 40.00 | 16.900 | 676.00 | _____ | 1478.75 |
| 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 | RECINOS, MARI | 1421 | 123.00 | 16.900 | 2078.70 | _____ | 3557.45 |
| 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 | PENA, ROBERTO | 175 | 40.00 | 16.900 | 676.00 | _____ | 4233.45 |
| 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 | BATISTA, RAMO | 175 | 40.00 | 16.900 | 676.00 | _____ | 4909.45 |
| 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 | BATISTA, ANGE | 175 | 92.50 | 16.900 | 1563.25 | _____ | 6472.70 |
| 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 | SOLIS, EUGENI |  | 40.00 | 16.900 | 676.00 | _____ | 7148.70 |
| 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 | BETHANCOURT, | 1421 | 125.00 | 16.900 | 2112.50 | _____ | 9261.20 |
| 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 | LIMA, HECTOR | 1421 | 80.00 | 16.900 | 1352.00 | _____ | 10613.20 |
| 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 | ORDONEZ, ARMA |  | 72.00 | 16.900 | 1216.80 | _____ | 11830.00 |
| 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 | RECINOS, JUAN | 1421 | 32.00 | 16.900 | 540.80 | _____ | 12370.80 |
| 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 | RECINOS, WALT | 1421 | 40.00 | 16.900 | 676.00 | _____ | 13046.80 |

                    *TOTAL DUE:        772.00    HRS    13046.80              13046.80
                    *TOTAL PAID:    _____        _____
                    *BALANCE:       _____        _____

                    *EMPLOYEES LISTED:      13
                    *EMPLOYEES PAID:     _____