UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL J. McNALLY, as he is TRUSTEE, NEW ENGLAND LABORERS' TRAINING TRUST FUND; LOUIS MANDARINI, JR. as he is TRUSTEE, MASSACHUSETTS LABORERS' HEALTH AND WELFARE FUND; JAMES MERLONI, JR., as he is TRUSTEE, MASSACHUSETTS LABORERS' PENSION FUND and MASSACHUSETTS LEGAL SERVICES FUND; MARTIN F. WALSH, as he is TRUSTEE, MASSACHUSETTS LABORERS' ANNUITY FUND and MASSACHUSETTS LABORERS' DISTRICT COUNCIL, <br>     Plaintiffs <br><br> vs. <br><br> ACT ABATEMENT CORP., <br>     Defendant <br><br> and <br><br> PEABODY CONSTRUCTION CO., INC., <br>     Reach-and-Apply Defendant <br><br> and <br><br> DUNBAR & RODMAN, LLP, <br>     Trustee | C.A. No. 05-10147 RCL |

## MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR ATTACHMENT BY TRUSTEE PROCESS

I. **INTRODUCTION**

This is an action to enforce the terms of a collective bargaining agreement, of employee benefit plans, and of settlement agreements entered into by and between the parties.

Plaintiffs Paul J. McNally, as he is Trustee, Massachusetts Laborers' Health and Welfare Fund, *et al.*, have moved this honorable Court, pursuant to Rule 64 of the Federal Rules of Civil Procedure, M.G.L. c. 246, and Rule 4.2 of the Massachusetts Rules of Civil Procedure, for an Order of Attachment by Trustee Process of ACT Abatement Corp.'s counsel Dunbar & Rodman, LLP's Interest on Lawyers' Trust Account ("IOLTA"), subject to the statutory exemptions of M.G.L. c. 246 and Title II of the Federal Consumer Credit Protection Act, 15 U.S.C. §1673.

Plaintiffs would seek an attachment on the IOLTA account only to the value of a $95,679.34 check (minus agreed-upon attorneys' fees for Dunbar & Rodman, LLP of $8,500.00) ("the Payment"), which represents a partial payment by ACT of its outstanding liability to the Plaintiff Funds. The $95,679.34 check was issued pursuant to a Settlement Agreement and Release entered into by the Plaintiffs, ACT, Reach-and-Apply Defendant Peabody Construction Co., Inc. ("Peabody") and its surety and deposited into Dunbar & Rodman, LLP's IOLTA account. A copy of the Settlement Agreement and Release is attached to the Plaintiffs' Amended Complaint ("Amended Complaint") as Ex. K. As discussed in detail below, the Settlement Agreement and Release mandated, and correspondence from ACT and its counsel Ronald Dunbar supported, that the Plaintiffs would receive the Payment in consideration for the concessions made in the Settlement Agreement and Release and in accordance with previous settlement agreements between ACT and the Plaintiffs. See Amended Complaint, Ex. L.

However, to date, ACT has ignored the dictates of the Settlement Agreement and Release into which it willingly entered and has refused to authorize its attorney to release the Payment from the IOLTA account to the Plaintiffs. The instant motion is being filed on an emergency basis because of the Plaintiffs' reasonable concern that the Payment may at any time be disbursed from the IOLTA account and to the Defendant. While the Payment is in the IOLTA account,

complete records of the receipt and maintenance of the Payment are to be kept by Dunbar & Rodman, LLP in accordance with Massachusetts Rule of Professional Conduct 1.15. Thus, the Payment is assumedly accounted for and easily identifiable while it is in the IOLTA account. However, if Dunbar & Rodman, LLP was ordered by ACT to remit the Payment or a portion thereof to ACT, the Payment would no longer be identifiable and would most likely be disbursed. As such, there is great urgency to the Plaintiffs' receiving the Payment or, alternatively, an attachment by trustee process up to the amount of the Payment in the IOLTA account.

## II.   FACTS

Plaintiffs are multi-employer fringe benefit funds ("the Funds") that provide health, disability, dental and prescription benefits, life and accident insurance, defined pension, annuity and training benefits to laborers whose employers are signatory to collective bargaining agreements with the Massachusetts Laborers' District Council ("Union"). Amended Complaint, ¶¶3-8. Defendant ACT became a signatory contractor on or about May 17, 1995, when it agreed in writing to be bound to the terms of the Restated Agreements and Declarations of Trust establishing Plaintiff Funds, to the terms of a collective bargaining agreement with the Union, requiring contributions to Plaintiff Funds; and to any successor agreements. See Amended Complaint, Ex. A.

Since 1995, ACT has been a party to successive collective bargaining agreements with the Union, including to the current agreement that is effective from June, 2004 through May, 2008 ("the Agreement"). Id., Ex. B. This Agreement, like its predecessor agreements, requires employers to make contributions to Plaintiff Funds at specified amounts, for each hour worked by covered employees, and to file monthly Remittance Reports on which employers calculate the payments they owe. See Affidavit of Philip Mackay ("Mackay Aff."), ¶2, attached hereto as

3

Exhibit 1. The Agreement further provides that if delinquent payments have not been made after written notice has been given and seventy-two hours have passed, then employers "shall not have the privilege of employing Laborers under the terms of this Agreement . . ." See Amended Complaint, Ex. B, Art. XX.

In or around June, 2004, the Funds audited ACT and determined that it owed $294,638.17 in contributions for work performed through May, 2004, together with interest and underpayments. Mackay Aff., ¶3. On June 27, 2004, the parties entered into their first Settlement Agreement pursuant to which ACT agreed to pay $12,000.00 each week toward its audit balance, with the exception of every fourth week, when it would pay $47,000.00. In consideration for ACT's compliance with the payment arrangements, the Union agreed to refrain from withholding labor and the Funds agreed to refrain from filing suit. See Amended Complaint, Ex. C. After several payments, ACT ceased complying with the terms of the Settlement Agreement but cooperated with the Funds' efforts to collect monies owed from third parties. Nevertheless, as of December, 2004, it still owed $72,448.19 of the original audit balance, as well as an unliquidated amount for the period June through December, 2004. Mackay Aff., ¶4.

The Funds filed the instant suit to collect these contributions in January, 2005, naming Peabody as a reach-and-apply defendant. By letter dated March 23, 2005, ACT by its counsel offered to pay its debt by *inter alia*, pledging the entire payment it expected to receive from its claim against Peabody and its bonding company for work it had performed for Peabody on the Newton South High School job. See, Amended Complaint, Ex. D.

In September, 2005, the Funds again audited ACT and determined that, although it had paid all contributions owed for the previous audit period, it had accrued a new liability of

4

$268,193.00 for the period June, 2004 through August, 2005. Id., ¶5. On October 25, 2005, ACT met with a Union representative, to negotiate a new payment plan. Although ACT disputed a portion of the audit balance, which the Funds agreed to adjust, the company admitted to the vast majority of the Funds' audit. Id., ¶6. ACT's proposal again provided for payment of the monies it expected to obtain from it claim against Peabody's bond for the Newton South High School job, as a means to satisfy most of its debt to the Funds. ACT also agreed to pay all current contributions as they came due. See Amended Complaint, Ex. E. In consideration for ACT's compliance with this payment arrangement, the Union agreed to allow ACT to continue working. Id. ACT paid contributions for September, October and November, 2005, as set forth in its proposal and, through additional payments and the agreed upon adjustment to the audit balance, reduced that balance to $215,180.00. Mackay Aff., ¶7.

Meanwhile, Funds' counsel regularly communicated with ACT, Peabody and its surety, Travelers Casualty and Surety Company of America ("Travelers"), about the Newton South High School payment and both ACT and Peabody sought Funds' counsel's assistance in getting the paperwork processed so that payment could be released. See Amended Complaint, Ex. F. By letter dated January 18, 2006, ACT proposed yet another payment plan to the Funds' Trustees. That plan again memorialized ACT's agreement to pay the Funds from the proceeds of its claim against Peabody's bond. Specifically, ACT agreed to pay at least an additional $105,000.00 from the Newton South High School job. ACT further agreed that "to the extent that ACT receives any funds over $105,000 (possibly an additional $85,000), ACT will pay those funds to the Union immediately upon receipt if any past due amounts are owed to the Union at that time." ACT committed to remaining current in its payment obligations as well. Id., Ex. G. The Funds' Trustees voted to approve ACT's payment plan, which also provided for monthly payments of

5

$3,809.00 with $15,000.00 balloon payments every six months. Mackay Aff., ¶8. ACT was notified of the Funds' acceptance of its proposal by letter dated January 24, 2006. See Amended Complaint, Ex. H.

Between January and October, 2006, Funds' counsel had regular communications with counsel for ACT, with Peabody and with Peabody's surety about the additional payment to the Funds for the Newton South job and about the negotiations between ACT, Peabody, and Travelers as to what remained due and owing. Id., Ex. I. By letter dated March 29, 2006, ACT provided Funds' counsel with a signed change order from Peabody, agreeing to pay $95,679.00, the settlement figure agreed to by ACT and Peabody, "which when paid is also pledged to the Fund." Id., Ex. J. This payment was to be in addition to an initial payment from the Newton South High School job in the amount of $46,211.00, which the Funds received in May, 2006. Mackay Aff., ¶9.

On or about December 12, 2006, Travelers, Peabody and ACT signed a Settlement Agreement and Release for the payment of $95,679.34. In accordance with all previous correspondence and commitments between the Funds, Act and Peabody, payment was to be made to the Funds in exchange for which the Funds were to, and did, sign a release of claims against Peabody and Travelers. See Amended Complaint, Ex. K. Because Dunbar & Rodman had placed a lien for attorney's fees on the settlement, the check was placed in Dunbar & Rodman's IOLTA account, with representations by the firm that payment would be delivered to the Funds after the check cleared and the attorney's fees were deducted. See Affidavit of Anne R. Sills ("Sills Aff."), ¶2, attached hereto as Exhibit 2. Dunbar & Rodman first sought to deduct $10,619.41 in payment of their fees but agreed to settle for $8,500.00. See Amended Complaint, Ex. L. ACT is now refusing to authorize Dunbar & Rodman to release the check. Sills Aff., ¶3.

6

On or about December 14, 2006, the Funds audited ACT for the period September, 2005 through November, 2006 and determined that again, ACT underreported contributions, thereby accruing an additional liability for the audited period of $80,715.90. These contributions are in addition to the $134,857.61 in contributions that it still owes for the period January through August, 2005 as well as the $57,954.47 in underpayments and interest it owes on late payments. See Amended Complaint, Ex. M.

### III. ARGUMENT

**The Plaintiffs are entitled to an attachment by trustee process of the amount of the Payment as there is a reasonable likelihood that the Plaintiffs will recover judgment in an amount equal to or greater than the amount of the attachment exclusive of any liability insurance of the Defendant.**

Plaintiffs are entitled to a prejudgment attachment by trustee process of the $95,679.34 (less attorney's fees of $8,500) recently released by Peabody and Travelers in accordance with the terms of the Settlement Agreement and Release attached to the Amended Complaint as Exhibit K, that is currently being held in Dunbar & Rodman, LLP's IOLTA account. To obtain a trustee attachment, Plaintiffs need only demonstrate a reasonable likelihood that they will recover judgment in an amount equal to or greater than the amount of the attachment exclusive of any liability insurance of the defendant. See Rule 64, Fed.R.Civ.P., M.G.L. c. 246, and Rule 4.2, Mass.R.Civ.P.; Aetna Casualty and Surety Company v. Rodco Autobody, 138 F.R.D. 328, 331-32 (D.Mass. 1991) (all remedies providing for seizure of person or property for purpose of securing satisfaction of judgment available in manner provided by law of state in which district court held). For the reasons set forth herein, the Plaintiffs have satisfied the requirements for an Order of Attachment by Trustee Process of the Payment being held by Dunbar & Rodman, LLP in its IOLTA account, totaling $87,179.34.

To begin with, the Plaintiffs' demand for judgment is for a total of $273,527.98 in fringe benefit contributions and interest owed by ACT for work done during the period of January, 2005 through November, 2006. The attachment the Plaintiffs seek by the instant motion is only for monies Peabody and Travelers paid, with the understanding that such monies were to go to the Funds, for work done on the Newton South High School project. This amount represents less than one-third of the Plaintiffs' total demand. The Plaintiffs will recover judgment in an amount equal to or greater than the attachment amount of $87,179.34.

In fact, ACT, via its counsel, has <u>admitted</u> to owing contributions to the Funds well in excess of the attachment amount sought by this motion. In the January 18, 2006 letter, attached to the Amended Complaint as Exhibit G, ACT's counsel presented a proposal whereby ACT would pay a total of $186,902.25 that it admitted owing at that time (before the audit for September, 2005 through November, 2006 had been conducted). According to the most recent audit results, attached to the Amended Complaint as Exhibit M, ACT continues to owe the Funds a total of $134,857.61 in contributions for the period through August, 2005. Therefore, by ACT's own admission via its January, 2006 payment plan proposal, it owed $186,902.25 through August, 2005. This amount has been subsequently reduced but remains, at $134,857.61, well above the amount of the attachment sought by the Plaintiffs. In sum, the Funds will recover judgment in an amount equal to or greater than the amount of the attachment sought by this Motion because of the preexisting audit balance through August, 2005 which has been admitted by ACT and which has yet to be paid.[1]

---

[1] As this is a contract claim, liability insurance would generally not be available to the Defendant. In any event, the burden is on the Defendant to show the existence of liability insurance to satisfy a prospective judgment. <u>Johnson v. Harris</u>, 1991 WL 226331, *2 (D.Mass. 1991).

Furthermore, plaintiffs will be able to establish that ACT's refusal to turn over the Payment is in breach of the terms of the Settlement Agreement and Release and other settlement agreements entered into by ACT and the Plaintiffs. Again, as the facts of this matter make clear, Travelers, Peabody, and ACT agreed in the Settlement Agreement and Release, and in numerous other writings, to have the Payment paid over to the Funds. There can be little question of intent with regard to the following language: "ACT proposes . . . . [d]irect payment of, at least, $105,000 to the Union from Peabody Construction with respect to the Newton South High School project" (January 18, 2006 letter from ACT's counsel to Funds' counsel); "...we have faxed to you today a signed Change Order with Peabody Const. Co. for $95,679.00, which when paid is also pledged to the Fund" (March 29, 2006 letter from ACT to Funds' counsel); and "I will have the check from the Newton South case no later than Friday for $95,679.34 . . . . Please let me know whether it is acceptable to cut a check to you for $85,059.93 for the Union . . . ." (December 11, 2006 e-mail from ACT's counsel to Funds' counsel).

The Payment was specifically earmarked in the Settlement Agreement and Release -- and in a number of other documents drafted by ACT and its attorney -- to be paid to the Funds in exchange for their release of claims against Peabody and Travelers and in partial settlement of ACT's fringe benefit contribution liability to the Funds.

The fact that the payment is being held in ACT's attorney's IOLTA account does not bar the attachment, as Massachusetts law permits attachment of funds held in an attorney's account. The Massachusetts Supreme Judicial Court has held that the funds of a client in the hands of his attorney are subject to attachment by trustee process at the request of the client's creditors where the funds are held by the attorney as the mere agent of his client. See Coburn v. Ansart, 3 Mass. 319, 321 (1807) (attorney may be summoned as garnishee of property of client in his possession);

9

Thayer v. Sherman and Adams, 12 Mass. 441 (1815) (attorney having money in his hands is liable as trustee of party for whose use such money was received); Cook v. Holbrook, 88 Mass. 572, 573 (1863) ("It is too late to call in question the right to charge an attorney in a trustee process for money collected by him for his debtor. It was sanctioned by this court as early as Coburn v. Ansart… and many subsequent cases…."). See also Gala Enterprises, Inc. v. Hewlett Packard Co., 970 F.Supp. 212, 217 (S.D.N.Y. 1997); citing In re Niles, 620 N.Y.S.2d 133, 134 (2d Dep't. 1994) ("As an escrow account, the IOLA (Interest on Lawyer) account can contain only client funds, and they are held by the attorney who maintains the account in his fiduciary capacity.").

## IV. **PLAINTIFFS NEED NOT POST A BOND UNDER M.G.L. c. 246, §1.**

No bond need be filed in an action for trustee process where the Complaint states that the action is *inter alia* for money due under a contract in writing. M.G.L. c. 246, §1. The unpaid contributions sought in this action are all due under the terms of Defendant's collective bargaining agreement with the Union. Amended Complaint, Ex. B; Certificate re Trustee Process. As the Complaint seeks money due under the terms of a contract in writing, no bond is required.

## V. **CONCLUSION**

For the foregoing reasons, Plaintiffs request that this Court grant an Order of Attachment by Trustee Process of the Payment being held by Dunbar & Rodman, LLP in its IOLTA account, totaling $87,179.34.

Respectfully submitted,

PAUL J. McNALLY, as he is
TRUSTEE, NEW ENGLAND LABORERS'
TRAINING TRUST FUND, et al.,

10

By their attorneys,

/s/ Anne R. Sills
Anne R. Sills, Esquire
BBO #546576
Gregory A. Geiman, Esquire
BBO #655207
Segal, Roitman & Coleman
11 Beacon Street
Suite #500
Boston, MA  02108
(617) 742-0208
asills@segalroitman.com

Dated:  February 2, 2007

## CERTIFICATE OF SERVICE

This is to certify that a copy of the above Memorandum in Support of Emergency Motion for Attachment by Trustee Process has been served by first class mail upon the Defendant, ACT Abatement Corp. via its attorney Ronald Dunbar at Dunbar & Rodman, LLP, One Gateway Center, Newton, MA  02458 and upon Reach-and-Apply Defendant, Peabody Construction Co., Inc. via its attorney Myles Beltram at Domestico, Lane & McNamara, LLP, 161 Worcester Road, Framingham, MA  01701 this 2nd day of January, 2007.

/s/ Anne R. Sills
Anne R. Sills, Esquire

GAG/gag&ts
ARS 6306 03-294/memo-suppemergmotion-tp3.doc

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL J. McNALLY, as he is TRUSTEE,
NEW ENGLAND LABORERS' TRAINING TRUST
FUND; LOUIS MANDARINI, JR. as he is TRUSTEE,
MASSACHUSETTS LABORERS' HEALTH AND
WELFARE FUND; JAMES MERLONI, JR., as he is
TRUSTEE, MASSACHUSETTS LABORERS'
PENSION FUND and MASSACHUSETTS LEGAL
SERVICES FUND; MARTIN F. WALSH, as he is
TRUSTEE, MASSACHUSETTS LABORERS'
ANNUITY FUND and MASSACHUSETTS
LABORERS' DISTRICT COUNCIL,
          Plaintiffs

vs.

ACT ABATEMENT CORP.,
          Defendant

and

PEABODY CONSTRUCTION CO., INC.,
          Reach-and-Apply Defendant

and

DUNBAR & RODMAN, LLP,
         Trustee

C.A. No. 05-10147 RCL

### AFFIDAVIT OF PHILIP M. MACKAY IN SUPPORT OF EMERGENCY MOTION FOR ATTACHMENT BY TRUSTEE PROCESS

1.    My name is Philip M. Mackay. I am the Collections Agent for the Massachusetts Laborers' Benefit Funds ("the Funds"). In my capacity as Collections Agent, I review the audits of and payments by contractors that are bound by their Collective Bargaining Agreements with the Massachusetts Laborers' District Council to make contributions to the Funds for their laborer employees.

2. ACT Abatement Corp. ("ACT") has been a party to successive collective bargaining agreements with the Massachusetts Laborers' District Council, including the agreement which is effective from June, 2004 through May, 2008 ("the Agreement"). The Agreement, like its predecessor agreements, requires employers to make contributions to Plaintiff Funds for each hour worked by covered employees. The Agreement specifies the amount to be contributed by an employer to each of Plaintiff Funds for each hour worked. Employers are also required to file monthly Remittance Reports, on which employers calculate the payments they owe.

3. In or about June, 2004, the Funds audited ACT and determined that it owed $294,638.17 in contributions for work performed through May, 2004, together with interest and underpayments.

4. After entering into a Settlement Agreement with the Funds for payment of the audit balance, ACT made several payments but eventually ceased complying with the terms of the Settlement Agreement. It did, however, cooperate with the Funds' efforts to collect monies owed from third parties. As of December, 2004, ACT still owed $72,448.19 of the original audit balance for the period February, 2004 through May, 2004, as well as an unliquidated amount for the period June through December, 2004.

5. In September, 2005, the Funds again audited ACT and determined that although it had paid all contributions owed for the previous audit period, it had accrued a new liability of $268,193.00 for the period June, 2004 through August, 2005.

6. On October 25, 2005, ACT met with Fund Trustee Louis Mandarini, Jr. to negotiate a new payment plan. Although ACT disputed a portion of the audit balance, which the Funds agreed to adjust, the company admitted to the vast majority of the Funds' audit.

7. ACT agreed to enter into a new payment plan, and remitted contributions for September, October and November, 2005 as set forth in its proposal. Via additional payments and an agreed-upon adjustment to the audit balance, it reduced the June, 2004 through August, 2005 audit balance to $215,180.00.

8. ACT proposed another payment plan in January, 2006, in which it agreed to pay at least $105,000.00 for monies received for work done on a project at the Newton South High School job, to provide monthly payments of $3,809.00 with $15,000.00 balloon payments every six months, and to keep current with its contributions payments. The Funds' Trustees approved this proposal.

9. An initial payment from the Newton South High School job in the amount of $46,211.00 was received in May, 2006.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 5th DAY OF JANUARY, 2007.

_____
Philip M. MacKay

## CERTIFICATE OF SERVICE

This is to certify that a copy of the above Affidavit has been served by first class mail upon the Defendant, ACT Abatement Corp. via its attorney Ronald Dunbar at Dunbar & Rodman, LLP, One Gateway Center, Newton, MA 02458 and upon Reach-and-Apply Defendant, Peabody Construction Co., Inc. via its attorney Myles Beltram at Domestico, Lane & McNamara, LLP, 161 Worcester Road, Framingham, MA 01701 this 5th day of January, 2007.

_____
Gregory A. Geiman, Esquire

GAG/gag&tx
ARS 6306 03-294/affmackay.doc

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| PAUL J. McNALLY, as he is TRUSTEE, NEW ENGLAND LABORERS' TRAINING TRUST FUND; LOUIS MANDARINI, JR. as he is TRUSTEE, MASSACHUSETTS LABORERS' HEALTH AND WELFARE FUND; JAMES MERLONI, JR., as he is TRUSTEE, MASSACHUSETTS LABORERS' PENSION FUND and MASSACHUSETTS LEGAL SERVICES FUND; MARTIN F. WALSH, as he is TRUSTEE, MASSACHUSETTS LABORERS' ANNUITY FUND and MASSACHUSETTS LABORERS' DISTRICT COUNCIL,<br>　　　　　Plaintiffs<br><br>vs.<br><br>ACT ABATEMENT CORP.,<br>　　　　　Defendant<br><br>and<br><br>PEABODY CONSTRUCTION CO., INC.,<br>　　　　　Reach-and-Apply Defendant<br><br>and<br><br>DUNBAR & RODMAN, LLP,<br>　　　　　Trustee | C.A. No. 05-10147 RCL |

**AFFIDAVIT OF ANNE R. SILLS**
**PURSUANT TO MASS. R. CIV. P. 4.2(g)**

1.　　My name is Anne R. Sills. I am an attorney with the law firm of Segal, Roitman & Coleman and I have been involved in efforts to collect fringe benefit contributions owed the Massachusetts Laborers' Benefit Funds by ACT Abatement Corp. ("ACT").

2. Because ACT's attorney, Dunbar & Rodman, LLP, had placed a lien for attorney's fees on the settlement check received from Peabody Construction Co., Inc. and Travelers Casualty and Surety Company of America for work done on the Newton South High School job, the check was placed in Dunbar & Rodman's IOLTA account. Attorney Ronald Dunbar told me that payment would be delivered to the Funds after the check cleared and his attorney's fees were deducted.

3. It is my understanding that ACT is now refusing to authorize Dunbar & Rodman to release the check to the Funds.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 2nd DAY OF FEBRUARY, 2007.

/s/ Anne R. Sills
Anne R. Sills, Esquire

### CERTIFICATE OF SERVICE

This is to certify that a copy of the above Affidavit of Anne R. Sills has been served by first class mail upon the Defendant, ACT Abatement Corp. via its attorney Ronald Dunbar at Dunbar & Rodman, LLP, One Gateway Center, Newton, MA  02458 and upon Reach-and-Apply Defendant, Peabody Construction Co., Inc. via its attorney Myles Beltram at Domestico, Lane & McNamara, LLP, 161 Worcester Road, Framingham, MA  01701 this 2nd day of February, 2007.

/s/ Anne R. Sills
Anne R. Sills, Esquire

GAG/gag&ts
ARS 6306 03-294/affsills3.doc

2